## JACK LEE V. THE STATE.

No. 23045. Delivered January 31, 1945.
Rehearing Denied February 28, 1945.
Application for Leave to File Second Motion for Rehearing Denied
March 14, 1945.

The opinion states the case.

*J. R. Creighton,* of Mineral Wells, for appellant.

*Sam Cleveland,* District Attorney, of Stephenville, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of five years.

The State's evidence shows that appellant and deceased had been in the habit of going to Dallas and while there engaged in gambling; that on one occasion shortly before the killing, they had gone to Dallas and engaged in a game in which appellant lost all his money; that when deceased returned home, appellant's wife inquired of him where her husband was. He told her that he had left him in Dallas; that appellant had lost his money and had borrowed $25.00 from him. When appellant returned to his home, his wife took him to task for gambling and losing his money. A few days later, when appellant met the deceased, he asked him thereafter not to tell his wife any more about going to Dallas and gambling; that sometime thereafter they were both in Dallas again and when the deceased returned to his home he told Laura Toliver about their trip to Dallas and said that while there they had engaged in gambling. Laura Toliver told appellant's wife about it and she again reprimanded him for it; that on the day in question when appellant and the deceased met, he took the deceased to task for telling his wife about having been to Dallas and gambled. The deceased denied that he did so whereupon appellant asked him to go with him to his home and he would prove it by his wife. Appellant's wife, however, denied that the deceased had said anything to her about it but said that Laura Toliver did so. Appellant then used some vile language toward the deceased and at the same time drew his pistol and shot him twice. The deceased fled from the deadly assault but appellant pursued him, firing one more shot at him.

There is no material difference between the evidence of the State and that of the appellant except that when they arrived at appellant's home the deceased called him some vile names, ran his left hand in his left pocket, doubled up his right fist and drew back as if to strike him; that he knew the deceased had been carrying a pistol and had the reputation of being a dangerous man; that he believed the deceased was going to kill him or inflict serious bodily injury upon him, whereupon he shot the deceased in self-defense.

By Bill of Exception No. 1 appellant complains of the testimony given by a State Highway Patrolman that he arrested appellant on U. S. Highway No. 80, about twelve miles west of Fort Worth; that at the time of the arrest appellant was riding with a man who was coming to Fort Worth; that he searched the car and found an automatic pistol under the seat where appellant was sitting. Appellant objected to any evidence of the search and the result thereof because the search was made without a search warrant. We see no merit in the bill for two reasons: First, the automobile did not belong to appellant. Consequently

his rights were not invaded by the search and he had no legal right to object thereto. See Moss v. State, 135 Tex. Cr. R. 181; Phariss v. State, 137 Tex. Cr. R. 469. Second, the officer who made the arrest had theretofore been advised that appellant had committed a felony and was fleeing. Hence the officer had a legal right, under Art. 215, C.C.P., to arrest the appellant without a search warrant, and the arrest carried with it the right to search him. See Bevins v. State, 110 Tex. Cr. R. 52, 7 S. W. (2d) 532; Hodge v. State, 107 Tex. Cr. R. 579.

By Bill of Exception No. 2 appellant complains of the introduction in evidence of an automatic pistol taken from the automobile of a person other than appellant but in which he and the other person were riding at the time of his arrest and the search of the car. He claims that the officer had not obtained permission from the owner of the car to search it. This bill is qualified by the trial court who states that there was not any evidence that the officer had no permission to search the automobile. The bill as thus qualified fails to reflect any error. However, appellant testified that he shot the deceased with the automatic pistol introduced in evidence. Therefore, under any of the theories advanced by him the evidence was, to say the least of it, harmless.

Bills of Exception Nos. 3 and 4 relate to the same matter and will be disposed of together. These bills reflect that while Frank Granbury, Chief of Police of Mineral Wells, was testifying to a dying declaration of the deceased, he stated, among other things that the deceased said that appellant had lost his money and he let him have $25.00. The objection urged to this testimony was that it was irrelevant, immaterial and highly prejudicial. While the declaration by the deceased that he had loaned appellant $25.00 may not have been a contributing factor which engendered animosity in the mind of appellant toward the deceased which led to the killing and therefore was not admissible, still, to hold that this immaterial statement is of such a prejudicial nature as to require a reversal of the case would be magnifying the importance of it beyond sound reason. The underlying cause which brought about the killing was that deceased, on one occasion, told appellant's wife that they had been to Dallas; where they engaged in gaming and that appellant lost his money; that on another occasion he told Laura Toliver about them having been to Dallas and engaged in gaming; that she in turn told appellant's wife, who reprimanded him for his conduct. Thus, it will be noted that the fact that the deceased in his dying declaration said that on one of the occas-

ions when appellant lost his money he loaned him $25.00 could not possibly have injuriously affected his legal rights. It was the State's theory that the act of appellant in shooting the deceased was a willful and deliberate act while that of the defendant was that he acted in self-defense. Just how the statement complained of helped the State or injuriously affected the appellant is not apparent to us. See Hester v. State, 15 Tex. Cr. App. 567; Webb v. State, 133 Tex. Cr. R. 32; Nevil v. State, 143 Tex. Cr. R. 200 (204).

Bill of Exception No. 5 is qualified by the court who states in his qualification thereof that appellant reserved no exception to the testimony therein complained of. Having accepted the qualification, he is bound by it. Hence he has no just ground of complaint.

Bill of Exception No. 6 shows that Frank Granbury testified that after attending physician told the deceased that there was not any chance for him to recover, that he was going to die, that if he had anything to say he had better be saying it, whereupon the deceased remarked: "Mr. Frank, I am not going to live," and then made the statement that they (meaning he and appellant) had been to Dallas and had engaged in another game; that he came back and told Laura Toliver that they had been over there in a game; that appellant asked him why he told his wife about being over to this other game, to which deceased replied that he did not tell her anything; that appellant then remarked: "You d--- s-- of a b----; you did; we will go up to the house and prove it." Appellant took the deceased and marched him on up to the house. To the foregoing part of the dying declaration appellant objected upon the ground that it was but a conclusion and not a fact; that it was hearsay and highly prejudicial. It occurs to us that this testimony was not subject to the objection urged thereto. It was a part of the statement made by the deceased, while conscious of approaching death, of the facts which induced appellant to inflict the fatal wounds upon him. To have sustained the objection would have broken the continuity of the declaration relative to the facts which transpired at and before the killing and would have made the same unintelligible. In the case of Lane v. State, 59 Tex. Cr. R. 595, this court, in passing upon a somewhat similar question, said:

"If this witness had been living she certainly could have given the reason why appellant shot her."

So, in the present case, if the deceased had been living he

could have testified to all the facts which caused appellant to become angry and to make the assault upon him. We therefore overrule his contention. In support of the opinion here expressed we refer to the following authorities: Medina v. State, 43 Tex. Cr. R. 52; Grubb v. State, 43 Tex. Cr. R. 72; Stroud v. State, 113 Tex. Cr. R. 621.

By Bill of Exception No. 7 appellant complains of the action of the District Attorney in propounding to him on cross-examination the following questions and eliciting from him the following answers:

"Q. You spent good deal of time out of town? A. Yes, sir.
"Q. Over in Dallas? A. Yes, sir.
"Q. Ruffhouse (the deceased) saw you over there gambling?"

To which appellant objected on the ground that it was highly prejudicial and shed no light on any issue in the case. The question was not answered, whereupon the District Attorney inquired of him:

"Q. Junius Washington came back and told your wife that you were over there in Dallas gambling, isn't that true? Gambling and fooling with women—did he say you were over there? A. Yes, sir.
"Q. He came back and reported that to your wife, and you didn't like it, did you? A. I asked him why he done it.
"Q. Asked him why—he told you he did because it was true, didn't he? A. It was true."

We see no error reflected by the bill. The evidence complained of only tended to corroborate and sustain the deceased's dying declaration as to the cause which prompted appellant in making the deadly assault upon the deceased. See Hinton v. State, 100 S. W. 772.

By Bill of Exception No. 8 appellant complains of a certain interrogatory propounded to him on cross-examination by the District Attorney. The trial court qualified the bill and in his qualification thereof states that the District Attorney asked appellant the following question:

"You were going to Fort Worth; you didn't go up there and call on the officers and tell them what had happened; that you had shot Junius Washington, because he was trying to jump on you?"

Whereupon appellant's attorney remarked:

"We want to reserve a bill of exception, because the reference by the District Attorney to the failure of the defendant to notify the officers to such a matter. We ask this be declared a mistrial."

The court overruled the objection and appellant excepted. The record discloses that appellant testified in his own behalf, and on examination of him by his attorney stated, among other things, that after the shooting he went immediately to Walker's store on Sixth Avenue, where he flagged down a man in an automobile and with whom he was riding at the time of his arrest; that he was not trying to get away to avoid arrest but to go to Fort Worth to see some of his white friends to make bond for him. It was the State's theory that appellant was trying to flee when he flagged the automobile down, got into it and speeded away from where the offense was committed. It is always permissible to show flight as evidence of a consciousness of guilt. If he desired to flee, of course, he would not want to report to the officers what he had done, because the act of flight through which he expected to avoid arrest, prosecution and punishment would be of no avail to him. In our opinion, the cross-examination and the answer elicited thereby were germane to his testimony given on direct examination. Moreover, the District Attorney was justified in propounding the question to him with the purpose of testing the sincerity of his statement as to his purpose in going to Fort Worth. It must also be borne in mind that his defense was self-defense, and this issue was raised alone by his testimony. Therefore, the District Attorney was within his legal right to test the sincerity of his contention that he shot in self-defense. If he thought so, there was no need to hurriedly get away and thereby try to avoid arrest. It is written in the Good Book and it has frequently been said: "The wicked flee when no man pursueth; but the righteous are bold as a lion." Appellant cites us to a number of cases which he claims support his contention. We have examined these authorities and agree that the rule therein announced is the established rule in this state, but in each of the cases cited the accused was under arrest and his silence or failure then and there to speak could not be used as evidence against him, but such is not the case here. Having reached the conclusion that the bill fails to reflect any reversible error, the same is overruled.

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the language of the dying declaration, set out in Bill of Exception Number Six, wherein deceased said that appellant "took and marched me up to the house," was the expression of an opinion and a conclusion of the deceased and was therefore inadmissible. As supporting this contention, appellant takes the position that the word "marched," as there used, conveys the idea that he forced the deceased to accompany him to the house.

If appellant's version be accepted, yet same would not be inadmissible as a part of the dying declaration but would constitute a shorthand rendition of the facts. Fleming v. State, 101 Tex. Cr. R. 19, 274 S. W. 616; Gilbreath v. State, 124 Tex. Cr. R. 465, 63 S. W. (2d) 560.

Appellant insists that we misinterpreted the ground of his complaint, as evidenced by his Bill of Exception Number Eight and that quite a different question was presented by that bill when viewed in the light of the trial court's qualification thereto.

This requires a re-discussion of the bill at length.

It is noted that in qualifying this bill of exception, the trial court refers to the statement of facts for a review of the matter here presented. In other words, the trial court makes as a part of his qualification to the bill all the facts touching upon the question there presented.

It was the State's theory that after the killing, appellant fled in an automobile and was shortly thereafter arrested by the officers. Such testimony was offered by the State for the purpose of showing flight.

Appellant explains this conduct on his part, upon his direct examination, to the effect that he was at that time on his way to Fort Worth to contact friends to go his bail. He denied that he was running away or avoiding arrest.

Upon cross-examination the appellant, over his objection, was required to testify:

"I didn't go up there and call on these officers and tell them what happened, that I had shot Junius Washington, because he

was trying to jump on me,—I did not report it to anybody in Mineral Wells; I was afraid, excited."

It is of this testimony that complaint is made in Bill of Exception Number Eight.

In our original disposition of the case we treated the cross-examination referred to as being admissible as against appellant's explanation of the testimony showing flight on his part. Appellant insists that had the cross-examination gone no further than that, then the disposition made by us on the question would be correct but he insists that the matter went much further and had the effect of requiring him to admit before the jury that he did not, after the killing, report to the officers at Mineral Wells and explain to them not only the fact of the shooting but also that he shot in self-defense.

So, according to appellant's contention, the question presented by this bill of exception, in its final analysis, amounts to proof of the fact that appellant, after the killing, did not report to officers at Mineral Wells and in that report tell them of his justification which he claimed in the killing.

We have reached the conclusion that the State was authorized to so cross-examine the appellant upon his defensive theory and that such conclusion finds support in the case of Edwards v. State, 135 S. W. 540, 61 Tex. Cr. R. 307. In that case, the accused was, upon cross-examination, interrogated as to his conduct from the time of the killing up until he surrendered to the officers and, among other things, asked whom, if any one, he told about the killing. In holding such to be proper cross-examination, we said:

"A defendant who takes the witness stand in his own behalf assumes the character of a witness, and is subject to the same treatment as any other witness. If he puts himself on the stand in his own behalf, he renders himself liable to be cross-examined upon all the facts relevant and material to the case, and cannot refuse to testify to any facts which would be competent evidence in the case, if proved by other witnesses. * * * Appellant testified that he shot deceased in self-defense; that from the acts and conduct of deceased he believed his life was in danger. Any witness on behalf of defendant, who had testified to conduct rendering the defendant justifiable, would be subject, on cross-examination, to examination about when he first told the facts, and if when he was testifying was not the first time he had ever made such a statement. It was permissible on the part of the

state to show that defendant prior to his surrender and prior to his trial, had never told any one that he acted in self-defense, and that, opportunity offering, he had not told his brother."

Believing the original disposition of the case was correct, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

GRAVES, Judge.

Appellant strenuously insists that we were in error in disposing of bill of exceptions No. 8, in upholding the decision in the case of Edwards v. State, supra, and says that the same is in direct conflict with the opinion in Johnson v. State, 272 S. W. 783. We do not think these two cases are in such conflict.

Unquestionably one accused of crime cannot be forced to give evidence against himself, but such a right can be waived, and we are constrained to agree with the Edwards case, supra, that when a defendant takes the witness stand he then opens the way at least for an examination of matters that did not occur while he was in custody or arrest on such charge.

We do not agree that the Johnson case, supra, holds in effect that when one charged with crime voluntarily takes the stand, that he cannot be asked any question that might tend to incriminate him. If such were the law there would be no reason for cross-examination of a defendant who voluntarily took the stand in his own behalf.

The Johnson case is based on the reasoning of Skirlock v. State, 272 S. W. 782; Ripley v. State, 58 Tex. Cr. R. 489, 126 S. W. 586, and Thompson v. State, 88 Tex. Cr. R. 29, 224 S. W. 892. All of these cases relate to the silence of the accused while under arrest and in custody, and do hold that accused's silence at such time cannot be shown as a circumstance against him. The basis of such holding rests upon the statute, Art. 3, C. C. P., which provides that an accused "shall not be compelled to give evidence against himself," but such right can be and is waived when he voluntarily takes the witness stand. Pyland v. State, 33 Tex. Cr. R. 382, 26 S. W. 621; Hargrove v. State, 33 Tex.

Cr. R. 431, 26 S. W. 993; Thomas v. State, 33 Tex. Cr. R. 607, 28 S. W. 534; Brown v. State, 38 Tex. Cr. R. 597, 44 S. W. 176.

In the case of Henderson v. State, 101 S. W. 208, this identical question has been written upon, and it holds in effect that an accused could be questioned while on the witness stand as to whether he had ever told anyone before of the transaction with the same explanation as he testified to on the stand, and whether he had ever mentioned this defense before. This was held to be a proper question on cross-examination, and the Henderson case has been cited with approval as late as Taylor v. State, 118 Tex. Cr. R. 340, 42 S. W. (2d) 426. The Johnson case, supra, where it holds otherwise is overruled. This also seems to be the rule in civil cases. See Gulf, Colorado & Santa Fe R. Co. v. Matthews, 100 Tex. 63 93 S. W. 1068; Fort Worth & D. C. R. Co. v. Yantis, 185 S. W. 969.

In regard to the holding in such Johnson case, that the State could not show the failure of the accused to give his version of an accidental killing when, at some date after the homicide, he was conversing with his wife, and again with a brother-in-law, we are not impressed with the soundness of such ruling, based, as the decision in said case is, upon cases dealing only with an accused's silence while in custody of an officer.

In this instance appellant was endeavoring to explain away the odium created by his hasty trip from Mineral Wells soon after the killing; the State had a right to try to combat that testimony, as well as to show, if they could, when appellant had decided upon his plea of self-defense.

For the reasons herein stated the leave to file second motion for a rehearing is denied.