NO. 07-02-0386-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 23, 2003

_____


MEREDITH CARPER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-436656; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

In a single point, appellant Meredith Carper challenges her conviction of aggravated

assault and the resulting jury-assessed sentence of two years confinement in the

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

Institutional Division of the Department of Criminal Justice. In her point, she argues the trial court violated her constitutional right to remain silent and to have the benefit of counsel by allowing her to be cross-examined regarding her invocation of her right to remain silent. Disagreeing that reversal is required, we affirm the judgment of the trial court.

In the course of the trial and after explanation of her right not to do so, appellant chose to take the witness stand and testify. To properly discuss this appeal, it is necessary to review the legal principles that will govern our decision. It is now axiomatic that a defendant who takes the stand as a witness on the trial of the merits may be cross-examined and impeached in the same manner as any other witness. *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex. Crim. App. 1985). That being so, such a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself or herself, cross-examined as to new matters, and treated in every respect as any other witness except when there are overriding constitutional and statutory provisions. *Id.*

In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the United States Supreme Court held that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of pre-arrest silence or failure to mention exculpatory facts to impeach a criminal defendant's credibility. *Id.* 447 U.S. at 238-89, 100 S.Ct. at 2129. While the Fifth Amendment prevents the prosecution

2

from commenting on the silence of a defendant who asserts the right to remain silent during his criminal trial, it is not violated when a defendant, who testifies in his or her own defense, is impeached with his or her own silence. Such impeachment is allowed because of the defendant's own decision to cast aside his cloak of silence, and because it advances the truth finding function of the criminal trial. That right, however, is subject to the qualification that when an accused is advised of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and invokes her rights, her silence then cannot be used to impeach her trial testimony. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex. Crim. App. 1981). In *Doyle*, the prosecutor impeached Doyle's testimony at trial by revealing that Doyle had remained silent after being arrested and informed of his *Miranda* rights. The Supreme Court held that it was a violation of due process to draw unfavorable inferences from what may have been an exercise of the defendant's right to remain silent under *Miranda. Doyle,* 426 U.S. 619, 96 S.Ct. at 2245. The Court observed that, if the question was properly preserved for appellate review, questions about a defendant's **post-arrest** silence would have been improper. *Id.*

In order to preserve a question for appellate review, the record must show that a timely request, objection or motion was made in the trial court. Tex. R. App. P. 33.1. To be timely, the objection must have been made at the earliest possible opportunity. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Objections made after questions are answered do not

3

preserve error for appeal. *Russell v. State*, 904 S.W.2d 191, 196-97 (Tex. App.–Amarillo 1995, pet. ref'd). Additionally, absent two exceptions not present here, in order to preserve error, a party must continue to object each time inadmissible evidence is offered. *Ethington v. State* 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

In advancing her argument that she was improperly questioned, appellant points out three colloquies, two of which occurred during the guilt or innocence phase of the trial and while she was being cross-examined by the prosecutor. They are as follows:

Q: What witnesses would you want the police to talk to?

A: All of them.

Q: Let's talk about that. You want them to talk to all of the witnesses?

A: Yes, sir.

Q: Okay. And who are the witnesses?

A. There was Annie.

Q: Annie. They talked to her; right?

A: Yes, sir. Me, Jeremy - -

Q: Hold on. You, you are a witness?

A: I was there.

Q. The cops talked to you?

A. No, they didn't talk to me.

Q. How come?

A. I don't know.

APPELLANT'S TRIAL COUNSEL: Objection. Mr. Hobson knows she has the Fifth Amendment right as the accused. He is trying to have the jury hold against her [that] she didn't talk to the police. It is a constitutional right not to.

THE COURT: Approach the bench.

THE COURT: She has waived her right against self-incrimination prior to her testifying. You can go into the fact that she did go to the police, that her dad called the police. And Rey Martinez [the State's first witness], at some point in time, is probably going to testify that he called the dad back and told him this is going to the grand jury. If you want it to come in, but–

APPELLANT'S TRIAL COUNSEL: It is amazing that the Court knows so many facts of this case.

THE COURT: Well, for some reason, they put the police reports in the file. So after the last few weeks, I am glad that I do know a little bit about the facts of the case. But she is taking the stand. She is waiving her right against self-incrimination.

APPELLANT'S TRIAL COUNSEL: If she had one at that time.

THE COURT: I realize that. But he is allowed to cross-examine her about the fact that if she had any evidence as to acting in self-defense, that she could have brought that to their attention at that point in time.

APPELLANT'S TRIAL COUNSEL: Note my objection.

THE COURT: Your objection will be noted.

Q. (By the prosecutor). You want the cops to talk to witnesses, right?

A: Yes.

Q: And you told me you didn't know why the cops didn't talk to you?

A. No, sir.

Prior to this colloquy, appellant had said she had told her father, an ex-assistant district attorney, about the fight a day or two after it happened and he "called up to–I guess to where the police work. He knows about this kind of stuff. And they had said that they were investigating it. He talked with Detective Martinez." Detective Martinez was one of the officers who investigated the incident giving rise to appellant's prosecution.

The second colloquy to which appellant refers took place subsequent to the first and is as follows:

Q. So did you involve the authorities at all?

A. No, sir, I didn't.

Q. Even though you knew the authorities were looking at the case?

A. I figured, sir, they would get a hold of all of us and would talk to all of us.

Q. Didn't the police try to get a hold of you?

A. No, I never got a call from the police.

Q. You never got a call from the police?

A. No.

The third colloquy referenced by appellant occurred during the testimony of appellant's father in the punishment phase of the trial. It is as follows:

Q: (by the prosecutor) But she has not chosen to avail herself of any counseling while this intervening year and a half has gone on, has she?

6

A: Well, Mr. Hobson, if she had availed herself of counseling, we would be hearing about everything she said, and I advised her not to do that until this case is resolved.

Q. Were you acting as her father or as her lawyer?

A. Both.

Initially, the first two colloquies which we have set out, as far as this record shows, were questions concerning her pre-arrest silence with regard to the police. As we have noted, questions about a witness's pre-arrest silence do not violate applicable provisions of the federal and state constitutions. *Cisneros,* 692 S.W.2d at 85; *see also Lee v. State*, 148 Tex. Crim. 220, 185 S.W.2d 978, 981-82 (1945) (in case involving self-defense, testifying defendant may be asked if he had ever mentioned that defense before). Nothing in this record would indicate any reason why that rule is not applicable here.

However, appellant also argues, as best we understand, that questions were improperly allowed about her silence after her right to counsel had been invoked. As an example of that, she refers to the questions asked her father during the third colloquy we have set out above. In making that argument, she relies upon *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). In that case, the Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain that right to him. *Id.* 512 U.S. at 457-58, 114 S.Ct. at 2354. The Court also explicated that the suspect must "unambiguously" request counsel and a proper request requires "as a minimum, some

7

statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* 512 U.S. at 459*, 114 S.Ct. at 2355 (citing *McNeil v. Wisconsin*, 501 U.S.171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)).

We disagree that error is shown. First, the record to which appellant refers does not support an inference that the colloquies in question took place during a "custodial interrogation." Neither does it show that appellant had "unambiguously" invoked her right to counsel at the time in question. However, appellant argues that her right to counsel during any questioning had been invoked on her behalf by her father. She cites *Janecka v. State*, 739 S.W.2d 813 (Tex. Crim. App. 1987), for the proposition that an accused person's attorney may invoke a defendant's right to counsel. The *Janecka* court did indeed opine that "[u]nder certain circumstances . . . an accused's attorney can speak for the accused in invoking Fifth Amendment protections." *Id.* at 828. The court, however, went on to explain those "circumstances." It explained that an attorney may speak for his client in invoking the Fifth Amendment rights if 1) the attorney-client relationship exists, 2) the attorney invokes the Fifth Amendment right to counsel in the presence of the accused or after conferring with the accused, 3) the accused does nothing to contradict his attorney, and 4) the officers agree not to question the accused in the attorney's absence.[2] *Id.* As applied here, the teaching of the case is that if appellant's father was actually representing her as an attorney at the time in question, the questioning amounted to "custodial

---

[2]However, in footnote 6 on page 828, the court qualified that fourth condition by noting that if an accused or his attorney has stated a desire to talk to the police only in the presence of counsel, that request must be honored "whether or not police officers agree."

8

interrogation," and the officers had clearly been informed by the attorney not to question her, then the attorney's invocation of her rights would be sufficient. However, under this record, the trial judge would be justified in concluding that the questions were directed to pre-arrest conduct and were not the result of custodial interrogation. Moreover, he could reasonably have concluded that the record was not sufficient to clearly show that either appellant's father, assuming he was acting as her attorney at the time, or appellant had invoked her Fifth Amendment right or her Sixth Amendment right to counsel. Moreover, the record does not show appellant made any objection to the questions.

Additionally, during appellant's cross-examination, and prior to the first colloquy, appellant was asked, without objection, whether she called the police when she got to her boyfriend's house after the occurrence, to which she replied that she did not. She was then asked, again without objection, why she did not call the police and her reply was that she did not think they would be involved. Subsequently, without objection, she admitted she had never called the police after the incident and admitted that the first time anyone got to hear her story was at the time of the trial. The record shows that testimony about appellant's silence was received on several occasions without objection. Thus, the question was not properly preserved for appellate review.

For the reasons we have set out, the record does not show reversible error. Accordingly, appellant's point is overruled, and the judgment of the trial court is affirmed.

9

John T. Boyd
Senior Justice

Do not publish.