### THOMAS CERDA V. THE STATE.

*No. 417.   Decided June 9.*

1. **Theft—Name of Owner—Variance.**—On a trial for horse theft, where the name of the owner, as alleged in the indictment, was P. Cortez, and the evidence was that his Christian name was "Felipe," and that "Felipe" is the Spanish for Phillip, that he was called Phillip, and that the two names were the same, *Held*, there was no variance.

2. **Defendant as a Witness—Impeachment by Contradictory Statements Made while in Arrest.**—A defendant as a witness in his own behalf may be impeached by his contradictory statements made while under arrest and unwarned, and especially so when his statements are not a confession of guilt nor tend to prove his guilt.

3. **Same.**—A defendant testifying in his own behalf stands as other witnesses, and may be impeached by the same methods.

4. **Charge—Refused Instructions.**—Where the charge of the court fully covers all the special issues raised by the evidence, it is not error to refuse special instructions based upon such special issues.

5. **Continuance.—Practice on Appeal.**—Where on appeal it appears from the other testimony that the matters proposed to be proved by the absent witness are not probably true, and that a different verdict would not have probably been reached had the absent witness so testified before the jury, it will be *held*, that the continuance was properly refused.

APPEAL from the District Court of Gonzales. Tried below before Hon. T. H. SPOONER.

This appeal is from a conviction for horse theft, the punishment assessed being imprisonment for ten years in the penitentiary.

The opinion sufficiently states the case.

*W. P. Harris*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—This is a conviction for theft of a horse, with the penalty fixed at ten years in the penitentiary. In the indictment it was alleged that the name of the owner of the stolen animal was "P. Cortez." Cortez testified, that he spelled his first name "Felipe." "I am a Mexican. I am known by the name of Phillip, which is in the American language the same as Felipe, which is a Mexican name. Either name is proper, for they are the same." Upon the subject of variance between the name charged and that proven, the trial court instructed the jury: "If you believe from the evidence that the true given name of the owner is Felipe Cortez, and you further believe that the name Felipe is a Spanish name, and that the English name Phillip is one and the same, and that the alleged owner P. Cortez was usually and commonly called in English, Phillip, then there would be no variance in the name alleged and that proven." This was correct. The defendant testified, in his own behalf, that on the night the horse was taken Cortez told him that the officers were after him, and to get on his horse and leave the country, which he did. On cross-examination counsel for the State asked defendant if he did not state, in the presence of Bensalow Basquez and R. H. Coleman, that he had no connection with the stolen horse, but subsequently said he had bought the horse, and was just from San Antonio? The defense objected, upon the ground that what defendant said while under arrest was inadmissible. Conceding that appellant was under arrest and unwarned at the time he made the contradictory statements, the question presented has been decided adversely to the contention of appellant by this court. A defendant testifying in his own behalf stands as other witnesses, and may be impeached by the same methods. What defendant said was not a confession of guilt or an admission tending to prove his guilt. The court carefully limited the effect of the evidence.

The defense asked an instruction upon the law applicable in a case where the property is taken with intent to use it temporarily, and the court refused to so instruct. Bearing on this matter the testimony of defendant is as follows: "On that evening Cortez borrowed $18 from me, and told me he would give his horse as security for the money. I told him I would not take that horse as security, but would take one of his other horses. He said all right. He then went back in town, and that night E. S. Cole searched a Mexican in front of the postoffice. I ran off, and Cortez with me. We went to the Monroe house, and Cortez told me that the officers were after me, and to get on his horse and leave the country, which I did."

The view entertained by the trial court is shown by the following charge to the jury: "The defendant, among other things, has offered evidence to show that he took the horse in question with the knowledge and consent of the alleged owner, that he (defendant) might escape from the officers of the law, who were in pursuit of him in Gonzales; and that the horse had been pledged to him. Now, if you believe that defendant took the horse with the consent of said P. Cortez, or if you have a reasonable doubt of the defendant's having taken the horse in question with a fraudulent intent to deprive the alleged owner of the value of the same, and to appropriate it to his own use and benefit, then you will acquit." This, we think, clearly and pertinently presented the law upon the issue raised by defendant's testimony, and there was no error in refusing the charge requested.

Defendant sought for a continuance on account of the witness Juan Juirel being absent. He stated that this witness would swear that Cortez told defendant that he could take the horse and leave town in order to evade arrest, and that Cortez had borrowed money from defendant and had agreed to pledge the horse. In view of the evidence adduced on the trial, it is not at all probable that such were the facts. It is not at all probable that a different verdict would have been reached had the witness been present and sworn to the effect stated. The evidence leaves no doubt that defendant stole the horse.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.