Noe **CISNEROS, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 054–83.

Court of Criminal Appeals of Texas, En Banc.

June 12, 1985.

Joseph A. Connors, III, McAllen, Larry Warner, Port Isabel, for appellant.

Edna Cisneros, Dist. Atty., and Lee P. Fernon, Asst. Dist. Atty., Raymondville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was indicted for murder. A jury found him guilty of the lesser included offense of voluntary manslaughter. His punishment was assessed by the court at 20 years' imprisonment.

On appeal the appellant urged, inter alia, the trial court reversibly erred in overruling his timely objection to his cross-examination by the prosecutor "about his remaining silent and failing to advise law enforcement about his defense of self defense." Finding no error the Corpus Christi Court of Appeals affirmed the conviction in an unpublished opinion. *Cisneros v. State* (No. 13–81–335 CR, Dec. 9, 1982).

We granted appellant's petition for discretionary review limited to appellant's ground of review that the "lower courts reversibly erred when they sanctioned the prosecutor's cross-examination about appellant bringing up his self-defense claim for the first time there in the courtroom."

Appellant argues that questions on cross-examination improperly referred to his pre-arrest and postarrest silence and infringed on his federal and state constitutional rights. He cites *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Franklin v. State*, 606 S.W.2d 818 (Tex.Cr.App.1978). Both of these cases dealt with the improper impeachment of the defendant as a witness in his own behalf, not merely the asking of improper questions. It appears that appellant contends both improper questioning and improper impeachment. He urges that here was a violation of the Fourteenth Amendment, United States Constitution, Article I, §§ 10 and 19 of the Texas Constitution and Articles 1.04, 1.05 and 38.08, V.A.C.C.P.

The evidence reflects that the appellant and the deceased, Raquel Loya Cantu, had lived together for some years, and their relationship had been stormy. On the night of December 15, 1979, they went to Joe's Barbeque to dance and drink beer. Later, about 2 a.m. on December 16 they drove to the Bus Stop or Continental Lounge in Raymondville. After Cantu crossed the street and was talking with friends in front of the lounge appellant, from some feet away, made some insulting remarks to Cantu, who told appellant to "Shut up." At this point appellant pulled a gun and began shooting. When the shooting was over, Cantu and another person were dead, and three other individuals were wounded. It is undisputed that appellant then fled and was not present at the investigation at the scene which followed. After talking the next day to his boss, Daniel Butler, at the ranch where he worked, appellant surrendered to authorities. The record does not show whether appellant received the warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor were facts developed to show what transpired after his arrest.

Investigating officers found a knife at the scene of the killing. The doctor who performed the autopsy testified the fatal bullet had entered behind the left ear of the deceased and lodged in the spinal column.

Butler was called as a State's witness and during his testimony it was revealed appellant told him (Butler) that he shot Cantu, that he was intoxicated and did not realize what he was doing.

Before the appellant offered any testimony, it was thus established by undisputed evidence from the State's case-in-chief that the appellant had left the scene of the killing without waiting for the officers, and that he had told Butler he was intoxicated and did not realize what he was doing when he shot Cantu.

Thereafter, testifying in his own behalf, appellant admitted that he shot and killed Raquel Cantu, but claimed he acted in self-defense. He told how Cantu had cut him on other occasions, and that just before the shooting Cantu had brandished a knife and had stabbed him before he fired his weapon.[1]

On cross-examination of the appellant the record reflects the prosecutor asked:

"Q Isn't it a fact, Mr. Cisneros, that you would like to have it to have happened the way you now testify and not what actually happened?

"A Would you repeat, please?

"Q In other words, you would like the incident to have happened the way you have testified but not the way it really happened; isn't that right?

"A No, ma'am.

"Q You remember telling Butler that you were drunk and you hadn't realized what you had done?

"A Yes, ma'am.

"Q You didn't stay there at the scene, did you, until the police arrived and tell the police what had happened?

"A No, ma'am.

"Q So the self-defense or the stabbing, this is the first time this has come up, isn't it?

"MR. WARNER: That is not true. That is not true.

"THE COURT: Overruled, if you are objecting.

"A "Repeat the question, please.

"Q BY MISS CISNEROS: Isn't it true that this is the first time that you've come up with self-defense? You didn't do it at the scene, did you? You didn't stay until the police arrived and you didn't tell Mr. Butler that?

"MR. WARNER: All Mr. Butler said is that he said he was drunk. And Mr. Butler specifically said that he didn't go into the details of the event.

"THE COURT: If you are objecting, I will overrule your objection, counsel.

"Q BY MISS CISNEROS: Mr. Cisneros, you did not stay at the scene to tell the police what happened?

"MR. WARNER: Now, that has been asked and answered.

"THE COURT: What?

"MR. WARNER: That has been asked and answered. I object on that ground.

"THE COURT: Overruled.

"Q BY MISS CISNEROS: Would you answer the question, please?

"A Repeat it.

"Q You did not stay at the scene, there at the Bus Stop, to tell the police what had happened—

"A No, ma'am.

"Q —did you? And what you told Mr. Butler later on that same day was that you were drunk and that you hadn't realized what you had done; isn't that right?

"A Yes, ma'am.

"Q So now when you say, 'I was scared and she stabbed me and I thought she was going to kill me,' *this is the first time that it actually comes up, isn't it?*

"A What do you mean?

"Q *This is the first time you brought it up, isn't it, here in the courtroom?* You didn't bring it out that night to the police, did you? You didn't tell Mr. Butler about self-defense, did you?

---

**1.** Other witnesses sharply disputed that Cantu had a knife on the date in question. No one other than appellant saw Cantu with a knife that evening and the killing took place in the presence of a number of witnesses. A knife was found at the scene several feet from Cantu's body, but also close to other victims. The police estimated 40 people were at the scene at the time of the investigation.

"MR. WARNER: Your Honor, I object. He had a right to remain silent from the time this took place until today. And this is the first time that he has been in court.

"THE COURT: Overruled.

"Q BY MISS CISNEROS: Would you answer, Mr. Cisneros, please?

"A Would you repeat, please?

"Q All right. *Is it true that you did not stay at the Bus Stop to tell the police that Raquel had stabbed you?*

"A *That is right.*

"Q All right. And is it not true that you told Mr. Butler, 'I was drunk and I didn't realize what I was doing'? Isn't that true?

"A Not the same night, no, I didn't.

"Q Pardon? Well, a few hours later?

"A Yes, ma'am.

"Q *It is true, then, isn't it Mr. Cisneros?*

"A *I didn't talk to anybody about this.*

"Q Didn't you tell Mr. Butler, 'I was drunk and I didn't realize what I was doing'?

"A Yes, ma'am.

"MISS CISNEROS: We have no further questions. (Emphasis added as added by the Court of Appeals.)[2]

It is observed that the prosecutor first elicited from the appellant, without objection, that he did not stay at the scene and tell the police what happened, and that he told Butler he was drunk and hadn't realized what he had done. This was in accord with the earlier testimony from the State's case-in-chief.

To the initial question about self-defense coming up at trial "for the first time," appellant's counsel commented "That is not true. That is not true." To the second such question appellant's counsel recited what he thought Butler had said, etc. To both comments the court in effect stated, *"If you are objecting,* I will overrule your objection." Neither question was ever answered. The prosecutor then returned to

the repetitive questions about failure to stay at the scene and what appellant told Butler. When she returned to the "first time" interrogation, appellant parried "What do you mean?" To the next "first time" question counsel made a general objection, "Your Honor, I object. He had the right to remain silent from the time this took place until today. And this is the first time that he has been in court." The objection was overruled. When asked to answer the question, appellant responded with "Would you repeat, please?" The prosecutor returned to her repetitive questions. The interrogation concluded with questions about appellant's conversation with Butler. At no time did appellant ever answer any question about his self-defense being asserted for the first time at trial.

■ It is fundamental that an error to the examination of witnesses or to the admission of evidence is not preserved for appellate review absent a timely objection at trial. *Thomas v. State,* 530 S.W.2d 834 (Tex.Cr.App.1975); *Lejeune v. State,* 538 S.W.2d 775 (Tex.Cr.App.1976); *Crocker v. State,* 573 S.W.2d 190, 205 (Tex.Cr.App. 1978); *Ross v. State,* 678 S.W.2d 491 (Tex. Cr.App.1984). See also *Cooper v. State,* 578 S.W.2d 401 (Tex.Cr.App.1979); *Marini v. State,* 593 S.W.2d 709 (Tex.Cr.App.1980).

In *Martinez v. State,* 437 S.W.2d 842, 847 (Tex.Cr.App.1969), this Court wrote:

"It is fundamental that a timely objection to inadmissible evidence must be urged at the first opportunity. This was not done, nor has appellant shown a reason for delaying his objection. *Renfro v. State,* 156 Tex.Cr.R. 400, 242 S.W.2d 772." See also *Garcia v. State,* 573 S.W.2d 12 (Tex.Cr.App.1978); *Forbes v. State,* 513 S.W.2d 72 (Tex.Cr.App.1974), cert. den. 420 U.S. 910 [95 S.Ct. 830, 42 L.Ed.2d 840]. Failure to do so constitutes a waiver of the objection or matter. *Rodriguez v. State,* 577 S.W.2d 491 (Tex. Cr.App.1979). See also *Hendrix v. State,* 474 S.W.2d 230 (Tex.Cr.App.1971); *Esquivel v. State,* 506 S.W.2d 613 (Tex.

---

**2.** Appellant complains of the underlined portions of the above questions and answers.

Cr.App.1974); *Patterson v. State*, 509 S.W.2d 857 (Tex.Cr. App.1974); *Belcher v. State*, 661 S.W.2d 230 (Tex.App.—Houston [1st Dist.] 1983).

■ As pointed out in *Bice v. State*, 642 S.W.2d 263 (Tex.App.—Houston [14th Dist.] 1982), it is incumbent on defendant's counsel to voice a timely and specific objection to a question which allegedly infringed on defendant's right to remain silent and not to gamble on a witness' answer.

■ Further, when an objection is made, it must not only identify what is objected to but must set forth grounds for the objections. *Hinkle v. State*, 442 S.W.2d 728 (Tex.Cr.App.1969); *Evans v. State*, 480 S.W.2d 387 (Tex.Cr.App.1972). See also *Gentsch v. State*, 654 S.W.2d 768 (Tex.App.—Houston [14th Dist.] 1983); *Allen v. State*, 657 S.W.2d 151 (Tex.App.—Houston [1st Dist.] 1983).

In *Atwood v. State*, 537 S.W.2d 749 (Tex.Cr.App.1976), it was held the error, if any, was not preserved for review in the absence of a specific objection to particular questions involved, even though the defendant subsequently may have made a general objection to all such line of questioning.

■ As we view the record the first "objections" were mere statements of counsel's understanding of the record. The court was not even sure counsel was objecting. When the prosecutor resumed questioning, the objection made thereafter was general and not sufficiently specific in nature to preserve error. Nevertheless, if the objection had been timely and specific, we find no reversible error.

■ It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witnesses. McCormick and Ray, Texas Law of Evidence, Vol. I, Chapter 8, § 643, p. 487; 1 Branch's Ann.P.C., 2nd Ed., § 168, p. 170, and cases there cited; 62 Tex.Jur.2d, Witnesses, § 205, p. 130; *Shelton v. State*, 397 S.W.2d 850 (Tex.Cr.App.1965); *Cerda v. State*, 33 Tex.Cr.R.

458, 26 S.W. 992 (1894). See also *Davis v. State*, 478 S.W.2d 958 (Tex.Cr.App.1972); *Dunlap v. State*, 440 S.W.2d 672 (Tex.Cr.App.1969). Thus such a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter and treated in every respect as any other witness except when there are overriding constitutional and statutory provisions. *Taylor v. State*, 612 S.W.2d 566 (Tex.Cr.App.1981); *Williams v. State*, 607 S.W.2d 577 (Tex.Cr.App.1980); *Myra v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977); *Sensabaugh v. State*, 426 S.W.2d 224 (Tex.Cr.App.1968). See also *Valerio v. State*, 494 S.W.2d 892 (Tex.Cr.App.1973); *Black v. State*, 440 S.W.2d 668 (Tex.Cr.App.1968); *Gonzales v. State*, 160 Tex. Cr.R. 548, 272 S.W.2d 524 (1954).

Once the defendant testifies "[t]he interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). See also *Fitzpatrick v. United States*, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900).

■ It is also a general rule of evidence that the prior silence of a witness as to a fact to which he has testified, where such silence occurred under circumstances in which he would be expected to speak out, may be used to impeach the witness during cross-examination. 3 A Wigmore, Evidence, § 1042 (Chadbourn rev.1970). See *Franklin v. State*, 606 S.W.2d 818, 848 (Tex.Cr.App.1979) (Opinion on Appellant's Motion for Rehearing).

In *Marshall v. State*, 471 S.W.2d 67 (Tex.Cr.App.1971), the impeachment of the defendant was held proper and not in violation of the Fifth and Fourteenth Amendments, United States Constitution. The defendant waived his right to remain silent at trial and testified the homicide involved was an accident. He was thus subject to

impeachment regarding his previous silence, and interrogation by the prosecutor as to his failure to tell police there was an accident which did not appear to relate to a time when the defendant was under arrest was proper.

In *Edwards v. State*, 61 Tex.Cr.R. 307, 135 S.W. 540, 543, 544 (1911), the Court wrote:

"Appellant testified that he shot the deceased in self-defense; ... It was permissible on the part of the state to show that defendant, prior to his surrender and prior to his trial had never told anyone that he acted in self-defense, and that opportunity offering, he had not told his brother." See also *Lee v. State* [148 Tex.Cr.R. 220,] 185 S.W.2d 978 (1945); *Henderson v. State*, 50 Tex.Cr.R. 604, 101 S.W. 208 (1907).

In *Ayers v. State*, 606 S.W.2d 936 (Tex. Cr.App.1980) (Opinion on State's Motion for Rehearing), it was held that where the defendant's trial testimony that he acted in self-defense and that he blacked out was inconsistent with his prearrest statement, wherein he failed to assert those facts, the prosecutor could properly test defendant's credibility by pointing out the inconsistencies. The prosecutor's questions did not violate the defendant's right to self-incriminations. See also *Williams v. State*, 607 S.W.2d 577 (Tex.Cr.App.1980).

█ In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the United States Supreme Court held that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of prearrest silence or failure to mention exculpatory facts to impeach a criminal defendant's credibility. While the Fifth Amendment prevents the prosecution from commenting on the silence of a defendant who asserts the right to remain silent during his criminal trial, it is not violated when a defendant, who testifies in his own defense, is impeached with his prior silence. Impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.

█ Nor, as the Court further made plain, does the use of prearrest silence to impeach a defendant's credibility deny him the fundamental fairness guaranteed by the Fourteenth Amendment. Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.

In *Jenkins* the defendant testified in his own behalf that he had killed the victim in self-defense. The prosecutor interrogated him as why he did not assert this theory earlier. This was not improper impeachment by use of prearrest silence.

█ It is, of course, true that after an accused is advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and invokes his rights, his silence cannot be used to impeach his testimony at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex.Cr.App.1981). See Bridge, Criminal Procedure, 36 S.W.L.J. 545, 554 (1982–83). In *Doyle* the prosecutor impeached Doyle's testimony at trial by revealing that Doyle had remained silent after being arrested and informed of his rights under *Miranda*. The Supreme Court held that it was a violation of due process to draw unfavorable inferences from what may have been an exercise of the defendant's right to remain silent under *Miranda*.

Appellant relies upon *Doyle*, but in *Jenkins* the Court explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Jenkins* the Court noted the failure to speak involved in that case occurred before the defendant was taken into custody and given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before his arrest. See also *Anderson v. Charles*, 447

U.S. 404, 407–408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980).

As distinguished in *Jenkins*, *Doyle* is not applicable in the instant case given the facts.[3]

■ Reading the cross-examination in context, we are satisfied, as was the Court of Appeals, that the questions inquired only into appellant's prearrest silence, not any postarrest silence.[4] From what has been said there was no violation of the Fifth and Fourteenth Amendments, United States Constitution, see *Jenkins* and *Marshall*, supra, by virtue of the prosecutor's questions to the appellant as to his prearrest silence. If in fact there was impeachment, there was no error. As we view it, there was no answer to any of the "first time" questions, and the appellant was not impeached.

Further, we do not conclude that Article I, §§ 10 and 19, Texas Constitution, call for a different result in Texas as to prearrest silence under the circumstances of the instant case. See and cf. *Olson v. State*, 484 S.W.2d 756, 760–762 (Tex.Cr.App.1969); *Rodriguez v. State*, 631 S.W.2d 515, 517 (Tex.Cr.App.1982). Nor do we find a violation of Articles 1.04, 1.05 and 38.08, V.A.C. C.P., as urged by the appellant.

Of course, appellant has argued that the interrogation actually referred to his postarrest silence. For reasons stated, we do not agree. Further, the facts do not reflect whether appellant was ever given the *Miranda* warnings or what transpired after appellant surrendered to the authorities. *Doyle* is certainly not implicated.

■ In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the United States Supreme Court held that in the absence of the sort of affirmative assurances embodied in the *Miranda* warnings,[5] a state does not violate due process of law by permitting cross-examination as to postarrest silence when a defendant chooses to take the stand. A state is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

In reversing the Court of Appeals for the Sixth Circuit, the Supreme Court observed that there were no federal constitutional improprieties in the prosecutor's postarrest silence for impeachment purposes, where defendant testified at trial, admitted stabbing the victim, but claimed he acted in self-defense and that the stabbing was accidental and where this in-court statement was the first occasion on which the defendant offered an exculpatory version of the stabbing.

Here, as in *Jenkins*, the Court distinguished *Doyle* and concluded the Court of Appeals gave an overly broad reading to *Doyle*.

Appellant's ground of review is without merit. The judgment of the Court of Appeals is affirmed.

CLINTON and TEAGUE, JJ., concur in the result.

---

3. In *Franklin v. State*, 606 S.W.2d 818, 832 (Tex. Cr.App.1979), also relied upon by the appellant, the Court of Criminal Appeals reversed a capital murder conviction because the prosecutor impeached the defendant with the defendant's failure to relate an exculpatory story, his alibi defense, at several pretrial hearings at which the defendant testified. The Court held that the silence could impeach only if it occurred in a context in which the defendant would have been expected to speak, and that pretrial hearings were for a limited purpose and was not such a context. The alibi defense testimony was not at all relevant to such pretrial hearings. *Franklin*, like *Doyle*, does not support appellant's position in the instant case.

4. Appellant does direct our attention to several questions by the prosecutor which he contends refer to his postarrest silence. In these situations it is observed that three questions were asked at once. The first broad "first time" question was limited by the second and third questions relating to prearrest situations. These questions were never answered.

5. As in the instant case, the record in *Fletcher v. Weir*, supra, did not show that the *Miranda* warnings had been given.