COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

RAUL
ANTONIO DELGADO,                            )                    No. 
08-00-00490-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                        394th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of Jeff Davis County, Texas

                                                                              )

Appellee.                           )                                (TC# 673)

 

O
P I N I O N

 

Raul
Antonio Delgado appeals his conviction for possession of marihuana (Count I)
and tax stamp violation (Count II).  A
jury found Appellant guilty of each count. 
The trial court 
assessed Appellant=s
punishment for Count I at imprisonment for a term of five years, and for Count
II, a fine of $191,296 and imprisonment for a term of five years.  We reform the judgment to reflect that
Appellant did not waive his right to a jury trial, that
he entered his plea of not guilty before a jury, and that trial was held before
a jury rather than the trial court.  We
affirm the judgment as reformed.

FACTUAL SUMMARY








On
December 5, 1998 at around 10 p.m., Matt Adams, Chief Deputy Sheriff of Jeff
Davis County, was patrolling the streets of downtown Fort Davis.  Adams saw a red Chevy S-10 Blazer which did
not have a front license plate or a light illuminating the rear license
plate.  Additionally, the left taillight
was not illuminated, so Adams stopped the vehicle.  Prior to exiting his patrol car, Adams
requested the Marfa dispatcher to run the license plates.  Adams exited his vehicle and approached the
Chevy S-10.  The driver, identified in
court by Adams as Appellant, gave him a driver=s
license identifying himself as Raul Antonio Delgado but he did not have
insurance.  Adams also noticed that the
vehicle had an expired inspection sticker and registration.  Appellant told Adams that the vehicle
belonged to his cousin but he did not provide the cousin=s
name.  Adams examined the information on
the driver=s license
and he confirmed with Appellant that the information on it was correct.  The license showed that Appellant lived in
Dumas, Texas.  Appellant told Adams that
he had been in Mexico but was returning home to Dumas.  About that time, the dispatcher informed
Adams that the license plate on the vehicle had been reported as stolen.  Appellant told Adams he did not know anything
about it.  Following established
procedure, Adams removed the plate from the vehicle and he asked the dispatcher
to run the vehicle identification number (VIN). 
After the dispatcher informed Adams that there was no record associated
with this VIN, he decided to impound the vehicle.  After Appellant exited the vehicle, Adams
looked at the VIN on the inside of the driver=s
door and saw that it had been peeled off and then replaced.  The VIN was illegible.  Adams=
suspicions were further aroused because Appellant had no belongings in the vehicle
other than a jacket and cellular phone, even though he had been on a trip to
Mexico, and there was nothing in either the glove box or the center
console.  








Adams
issued a citation to Appellant for displaying a fictitious license plate and
having no insurance, and he issued a warning for not having a front license
plate and a rear license plate light, and for having a defective rear taillight
and expired inspection sticker.  In
addition to information taken from Appellant=s
driver=s
license, the citation reflects Appellant=s
telephone number and social security number. 
Adams recalled that Appellant provided that information verbally.  At trial, Adams reviewed a photocopy of
Appellant=s driver=s license and identified the person
depicted in the photograph as the same person he stopped on the evening of December
5, 1998.  After giving Appellant the
citation, Adams gave him a ride to a motel in Fort Davis.  

Sheriff
Steve Bailey and reserve deputy Tom Brown were also on patrol in Fort Davis on
the evening of December 5, 1998.  When
they heard Adam=s radio
transmission regarding a stolen license plate, they went to the scene to
provide back up.  At Adams= request, Sheriff Bailey looked at the
VIN inside of the driver=s
door and noticed that it had been altered. 
Stating he needed to finish some paperwork, Adams handed Sheriff Bailey
the driver=s
license.  Because it was cold that
evening, Sheriff Bailey and the driver of the vehicle sat inside of his patrol
car and talked for about ten to fifteen minutes. Sheriff Bailey made a positive
in-court identification of Appellant as the same person he sat with in the
patrol car on the evening of December 5, 1998. 
Appellant told Bailey that he was married and worked at a beef packing
plant in Dumas.  He had borrowed the car
from a friend, Chato Estrada of El Paso, to take his
sick mother to Mexico.  Sheriff Bailey
subsequently determined that Estrada did not own the license plates or the
vehicle.

Later
that evening, Adams and Sheriff Bailey compared the stories Appellant had told
each of them.  Due to inconsistencies in
the stories and the other suspicious circumstances, Sheriff Bailey called U.S.
Customs to get a drug dog to search the car. 
On December 8, 1998, two customs agents and two dogs--fresh from a drug
program in a local school--arrived to search the vehicle.  Both dogs Ahit@ when they ran the vehicle.  In a hidden compartment beneath the vehicle,
they found 122 pounds of marihuana. There were no tax stamps on any of the
bricks of marihuana.  








At
some point after the marihuana had been discovered, two men, Ricardo Vargas and
Cesar Marquez, came to Fort Davis to pick up the vehicle.  They had paid for title to the vehicle
earlier that day and had a Texas Department of Transportation registration for
the vehicle.  Sheriff Bailey informed
them that they had discovered marihuana in the vehicle and he refused to
release the vehicle to them.  Vargas and
Marquez did not protest.

On
December 14, 1998, a grand jury indicted Appellant for possession of marihuana
and failure to display a tax stamp.  In
June of 1999, Adams and a reserve deputy traveled to Dumas to pick up Appellant
and transport him to Jeff Davis County.

Appellant
and his wife both testified at trial.  At
the time of trial in August of 2000, Appellant was operating a trucking
business which he had done for approximately one year.  He had not worked during the previous year
because he had injured his knee while working at Harley Feeders, a
feedlot.  He had not worked at the
feedlot since 1997.  In June of 1999, two
police officers arrested Appellant based upon a warrant out of Jeff Davis
County.  Appellant, who knew nothing of
the charge, remained in the Moore County jail for eight or nine days.  A reserve deputy from Jeff Davis eventually
picked up Appellant and transported him to Monahans
where he was picked up by Sheriff Bailey and transported to Jeff Davis
County.  Although the reserve deputy had
been nice to Appellant, Sheriff Bailey was rude and threatening.  When the sheriff questioned him, Appellant
invoked his right to counsel.  After
Appellant arrived in Marfa, he learned for the first time that he also had
charges against him related to a traffic citation.








In
August 1998, Appellant had surgery on his right knee to replace his ACL.  He used crutches for three months and
thereafter walked with a brace on the right knee for two more months.  Appellant could not drive with the brace on
his knee.  Appellant denied ever being in
Jeff Davis County before his arrest on these charges.  He had lost his driver=s
license or had it stolen in November of 1998. 
He reported it to the Department of Public Safety at about the same time
but did not get a new driver=s
license for several months.

On
cross-examination, Appellant could not remember the name of his doctor who
performed the surgery on his knee even though he had seen the doctor several
times and he did not remember the doctor=s
address.  He also could not recall the
name of the physical therapist he saw for three months following his
surgery.  Appellant admitted that he
worked at a meat packing plant for five years until 1997.  Appellant did not have a telephone in
December of 1998, and the telephone number on the citation did not match
Appellant=s current
number.  However, the citation correctly
reflected his social security number. 
Appellant explained that his social security card had been lost or
stolen along with his driver=s
license and wallet.








Patricia
Delgado has been married to Appellant for about seven years.  In November of 1998, Appellant told her he
had lost his driver=s license
and she reported it to the Department of Public Safety.  DPS advised Ms. Delgado that nothing could be
done except to obtain a new license.  In
November and December of 1998, Ms. Delgado was on leave from her job due to
medical problems related to pregnancy. 
Appellant was not working at the time because he had undergone surgery
on his knee.  Dr. Barnhill in Amarillo
had performed the surgery in August of 1998. 
Appellant could not drive for two to three months after the
surgery.  In November, he began walking
with the assistance of crutches and a knee brace.  Appellant began driving some in December but
it caused his knee to swell and hurt. 
Appellant was never gone overnight in December of 1998, and in fact, the
Delgados had never been apart during their
marriage.  In Ms. Delgado=s opinion, Appellant could not have
driven for fourteen to fifteen hours, which is the approximate length of time
for a round trip from Dumas to Fort Davis and back to Dumas.  The Delgados= previous phone number was
(806)935-4172.  That number exactly
matches the phone number given to Adams by the driver on December 5, 1998, and
recorded on the citation.

The
jury rejected Appellant=s
alibi and mistaken identity defenses and found him guilty of both counts.  The trial court=s
judgment reflects that Appellant waived his right to a jury and had his trial
before the court.  Elsewhere in the
judgment, it recites the jury=s
verdict in each count.  The record
verifies that the case was tried by a jury. 
Therefore, we reform the judgment to reflect that Appellant did not
waive his right to a jury, he entered his plea of not guilty before the jury
selected to hear his case, and the jury heard the evidence in his case.

INEFFECTIVE ASSISTANCE OF COUNSEL

In
his sole point of error, Appellant contends that he was denied the effective
assistance of counsel at trial.  He
complains that trial counsel failed to object to two instances of
cross-examination, and to the prosecutor=s
final argument.

Standard of Review








A
defendant is entitled to Areasonably
effective assistance.@  Strickland v.
Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,
2063, 80 L.Ed.2d 674 (1984); Stafford v. State, 813 S.W.2d 503, 506 (Tex.Crim.App. 1991). 
However, a defendant is not entitled to errorless counsel or counsel
whose competency is judged by hindsight. 
Stafford, 813 S.W.2d at 506; Calderon v.
State, 950 S.W.2d 121, 126 (Tex.App.--El Paso
1997, no pet.).  The proper
standard for determining claims of ineffective assistance under the Sixth
Amendment is the two‑step analysis adopted by the United States Supreme
Court in Strickland v. Washington. 
See Hernandez v. State, 988 S.W.2d 770, 771‑72
(Tex.Crim.App. 1999).  Under the first prong, the defendant must
show that counsel=s
performance was deficient, to the extent that counsel failed to function as the
Acounsel@
guaranteed by the Sixth Amendment.  Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.
1994).  The defendant must
demonstrate that his attorney=s
representation fell below an objective standard of reasonableness under
prevailing professional norms.  Vasquez v. State, 830 S.W.2d 948, 949 (Tex.Crim.App.
1992). Under the second prong, the defendant must establish that counsel=s deficient performance prejudiced the
defense.  Strickland, 466 U.S. at
687, 104 S.Ct. at 2064, 80 L.Ed.2d
at 693; Jackson, 877 S.W.2d at 771.  Prejudice is established by a showing that
there is a reasonable probability that but for counsel=s
unprofessional errors, the result of the proceeding
would have been different.  Strickland, 466 U.S. at 694, 104 S.Ct.
at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771; Hernandez v.
State, 726 S.W .2d 53, 55 (Tex.Crim.App. 1986).  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson,
877 S.W.2d at 771.








Under
the Strickland test, the appellant bears the burden of proving
ineffective assistance by a preponderance of the evidence.  Jackson, 877 S.W.2d
at 771; Calderon, 950 S.W.2d at 126.  Allegations of ineffectiveness of counsel
must be firmly founded in the record.  Hawkins v. State, 660 S.W.2d 65, 75 (Tex.Crim.App.
1983); Calderon, 950 S.W.2d at 126.  When a claim of ineffective assistance of
trial counsel is reviewed by this Court, we must indulge a strong presumption
that counsel=s conduct
falls within the wide range of reasonable, professional assistance and the
appellant must overcome the presumption that the challenged conduct can be
considered sound trial strategy.  Jackson,
877 S.W.2d at 771; Calderon, 950 S.W.2d at
126.  An appellant challenging trial
counsel=s
performance therefore faces a difficult burden and Aa
substantial risk of failure.@  See Thompson v. State, 9 S.W.3d 808, 813 (Tex.Crim.App.
1999).  In the absence of a record
demonstrating the basis for trial counsel=s
action or inaction, a defendant will rarely be able to rebut the presumption
that counsel=s action
or inaction constituted reasonable trial strategy.  See Thompson, 9
S.W.3d at 814.

Impeachment with Post-Arrest Silence

Appellant
argues that trial counsel was ineffective because she opened the door to
admission of evidence regarding post-arrest silence and she failed to object
when the prosecutor questioned Appellant about whether he told the Dumas police
officers who initially arrested him or any other law enforcement officer that
they had arrested the wrong man.  When a
criminal defendant takes the witness stand, he may be cross‑examined and
impeached as any other witness.  Cisneros v. State, 692 S.W.2d 78, 83 (Tex.Crim.App.
1985); Miller v. State, 939 S.W.2d 681, 687 (Tex.App.‑-El
Paso 1996, no pet.).  The
defendant may be Aimpeached,
contradicted, made to give evidence against himself,
cross‑examined as to new matters, and treated in every respect as any
other witness testifying in his behalf.@  Miller, 939 S.W.2d
at 687, quoting Cuellar v. State, 613 S.W.2d 494, 495 (Tex.Crim.App. 1981). 
However, this general rule is qualified by any overriding constitutional
or statutory prohibitions.  Cuellar,
613 S.W.2d at 495; Miller, 939 S.W.2d at
687.  It is well established that the
State may not use post‑arrest, post‑Miranda silence to
impeach or discredit an exculpatory theory, including a self‑defense
claim, elicited for the first time at trial. 
Miller, 939 S.W.2d at 687; see Doyle v. Ohio, 426 U.S.
610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Cisneros,
692 S.W.2d at 84; Cuellar, 613 S.W.2d at 495.  A comment on a defendant=s post‑arrest silence violates
the Fifth Amendment prohibition against self‑incrimination.  Doyle, 426 U.S. at 617‑18, 96 S.Ct. at 2244‑45. Further, the Texas Constitution
precludes the introduction of post‑arrest, pre-Miranda
silence.  Miller, 939 S.W.2d at 687.

During
her direct examination of Appellant, trial counsel asked Appellant the
following:

[Trial
counsel]:  Okay.  When did you first become aware of the
charges against you?








[Appellant]:  It was in -- that was in June of >99.

 

[Trial
counsel]:  What happened?

 

[Appellant]:  Two policemen came by my house and told me
they had a warrant out for my arrest.

 

[Trial
counsel]:  Where was the warrant from?

 

[Appellant]:  Jeff Davis County.

 

[Trial
counsel]:  Okay.  What, if anything, did you tell the policemen
at that time?

 

[Appellant]:  I was surprised.  I mean, I was shocked that they came to my
house and told me that.

 

[Trial
counsel]:  Did you tell them --

 

[Appellant]:  They told me -- they told me that they had a
warrant out for my arrest because of some marijuana in Jeff Davis County.

 

[Trial
counsel]:  Okay.  And did they instead arrest you?

 

[Appellant]:  They did.

During
cross-examination, the prosecutor pursued this line of questioning with
Appellant, asking whether he had ever told law enforcement that they Agot the wrong guy.@ 
Initially, Appellant could not recall that he had ever done that, and he
eventually said that he had not. 
Following a lunch break, however, Appellant testified that he had told
the police officers in Dumas that they had arrested the wrong person.  Appellant explained he had not understood the
earlier questions from either his attorney or the prosecutor.








It
is debatable whether this case actually involves impeachment with post-arrest
silence since Appellant gave conflicting testimony on the subject, but he
eventually insisted that he did not remain silent when arrested.  Assuming the jury believed that Appellant
made no protest when arrested, then the rules against impeachment with his silence
are implicated. 
However, since Appellant=s
attorney raised this issue on direct examination, it was not error for the
prosecutor to cross-examine him about it. 
Counsel is not ineffective for failing to object to admissible evidence.  McFarland v. State, 845 S.W.2d 824,
846 (Tex.Crim.App. 1992)(holding
that the failure to object to admissible evidence does not constitute
ineffective assistance).

With
respect to trial counsel opening the door to the prosecutor=s questioning of Appellant about his
response when arrested, we also find that Appellant has failed to establish
that trial counsel=s
representation fell below an objective standard of reasonableness under
prevailing professional norms.  Because
Appellant did not file a motion for new trial raising his ineffective
assistance of counsel claim, the record is silent with respect to trial counsel=s strategy in questioning Appellant
about this subject.  Nevertheless, it is
apparent from the record and the defensive theory employed consistently
throughout this trial that counsel anticipated Appellant would testify that he
told the officers they had arrested the wrong person.  This testimony bolsters Appellant=s mistaken identity defense.  Therefore, we find that Appellant has not
rebutted the presumption that his attorney=s
actions were based upon reasonable trial strategy.

Comment on Defense=s
Failure to Subpoena Witnesses








Appellant
next asserts that his attorney erred in failing to object when the State
cross-examined Ms. Delgado about the other witnesses who saw Appellant in Dumas
on December 5, 1998, but who had not been subpoenaed by the defense to
testify.  The prosecutor also raised this
issue in final argument without objection from counsel.  Appellant argues that the cross-examination
and the prosecutor=s
argument violates his right under the Fifth Amendment
to not be compelled to present evidence. 
It is well established that the State may comment in argument on the
failure of a defendant to call competent and material witnesses, and may even
argue that the reason for the failure was the defendant=s
knowledge that the testimony would be unfavorable.  Albiar v. State, 739 S.W.2d 360, 362‑63 (Tex.Crim.App.
1987); Carrillo v. State, 566 S.W.2d 902, 912 (Tex.Crim.App.
[Panel Op.] 1978).  If this is a proper
subject for comment, then it follows that the State may also cross-examine a
witness about the other witnesses who could have testified but who had not been
subpoenaed by the defense to do so. 
Counsel did not provide inadequate representation by failing to object
to this admissible evidence.  See
McFarland, 845 S.W.2d at 846.  Appellant=s
sole point of error is overruled.  The
judgment of the trial court, as reformed elsewhere in this opinion, is
affirmed.

 

July 25, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)