02-10-288 & 289-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

                                              NOS. 02-10-00288-CR

                                                        02-10-00289-CR

 

 


 
 
 Derek Jasper Moore
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Derek Jasper Moore walked into the Good Luck convenience store in Arlington,
brandished a handgun, and demanded that the owner empty the register. 
Approximately three weeks later, Appellant pursued Stephany Rodgers into that
same store, poured orange juice on her head, followed her back to her father’s
apartment, held a knife to her neck, and threatened to kill her.  A jury found Appellant
guilty of aggravated robbery and aggravated assault with a deadly weapon.  Appellant
now appeals those convictions, complaining in a single point that he was denied
“proper impeachment” in the aggravated assault case.  We affirm.[2]

Facts
and Procedural Background

          On
February 15, 2009, a video surveillance camera at the Good Luck convenience
store in Arlington recorded Appellant committing aggravated robbery.  After
retrieving a beer from the cooler, setting it on the counter, and stepping outside
momentarily, he returned with a handgun and demanded that the store owner empty
the register.  The owner complied, Appellant said “thank you” and left.

          On
March 9, 2009, Stephany Rodgers was scheduled to begin classes toward her
advanced medical assistant certificate.  She and Appellant had a child together,
and Stephany had arranged for Appellant to watch the little girl while Stephany
attended class.  Appellant had not answered Stephany’s calls the night before,
so on the morning of the ninth she went looking for him.

          When
she caught up with him at his “homeboy’s house,” they got into an argument that
escalated to blows.  The altercation continued during and after Stephany drove
them in her father’s car:  Stephany pushed Appellant; he punched her in the
face, jumped up and down on the hood of the car, and pushed her over a barbeque
grill, causing her to sprain her ankle.

          The
Good Luck convenience store was around the corner from Stephany’s father’s
apartment, which Stephany house-sat from time to time.  In the street near the
apartment, she abandoned her father’s car and set off for the store on foot,
thinking that Appellant would not follow her into a place he had robbed just
three weeks before.  As she walked in, she told store owner Thanh Lien that her
boyfriend had hit her, and she asked to use the telephone to call her mother. 
When Appellant entered the store and hurled a bottle of orange juice at Stephany,
Lien recognized him from the earlier robbery.

          Stephany
and Appellant argued their way back to her father’s apartment.  She was crying
and covered in orange juice, and Appellant ordered her to take a shower.  As
she did, she could hear Appellant ransacking the apartment.  When she came out
of the bathroom, she sat on the bed and told him that they should stop fighting
one another before one of them ended up dead.  He held a knife to her throat,
threatened to cut her from “ear to ear,” and replied, “It might be you.”

          There
was a knock at the front door of the two-story apartment.  Stephany started
down the stairs to answer it but Appellant pushed past her, forcing her down on
the steps.

          Arlington
police officer Sonia Mitchell[3]
had been dispatched to investigate a disturbance call at the apartment complex. 
Shortly after she arrived, she was joined by Officer Alexander Simmons who pulled
up to assist.

          The
officers noticed an abandoned gold Ford Explorer in the middle of the street with
the driver’s side door open, the lights on, and extensive damage to the hood.  As
they approached the apartment, they were stopped by two people who reported
that there was a male and female arguing.  At the apartment door, the officers
heard a male voice yelling inside and also heard what sounded like items being thrown
against a wall.

          Officer
Mitchell knocked on the door, and Appellant opened it.  Inside, the officers
found the apartment in disarray:  things were broken and strewn across the
floor; a knife protruded from the wall, and there was crying upstairs.  The
officers asked Appellant to step outside and stay with Officer Simmons.  Officer
Mitchell climbed the stairs and saw Stephany, crying loudly, shaking, and
sitting on the edge of the bed wrapped in a towel.

          Officer
Mitchell immediately noticed a small cut on Stephany’s neck.  She asked Stephany
if she was hurt and needed medical attention.  Stephany told her that she was
hurt and showed Officer Mitchell her injuries, but she did not seem to want to
elaborate on how she got them.  When Officer Mitchell pointed out the cut on
Stephany’s neck, Stephany said that she had been unaware of it up to that point
but that it must have happened when Appellant held the knife to her neck.

          Downstairs,
a hostile Appellant argued with Officer Simmons, who was trying to convince him
to identify himself.  Appellant said that he did not need to identify himself
and that he was not going to go to jail.  Officer Mitchell headed back
downstairs and informed Officer Simmons that they had enough information to
make an arrest.  Appellant resisted, but the officers were able to handcuff him
and take him into custody.  While the officers struggled with Appellant, Stephany
pleaded from upstairs for them not to arrest him.

          After
the officers escorted Appellant to a patrol car, Officer Mitchell went back
upstairs to talk to Stephany, who was still arguing against the officers’
taking Appellant to jail.  Officer Mitchell asked her what had made her so
significantly change positions, and she replied that she was afraid that
Appellant would kill her or have her killed or beaten up and that he would be
able to do so even from prison.  She did not want to take any part in the prosecution.

          Appellant’s
telephone calls from jail were recorded.  In one conversation with Stephany, he
demanded to know why she had told the police about him holding a knife to her
neck.  She did not want to admit to him that she had talked about the knife, so
she lied, saying that the police had tested the knife and had found her blood
on it.  He complained that as a result he was going to “be doing a couple of
years” and that she needed to “change that.”

          At
trial, Appellant’s investigator, Francis Fry, testified outside the jury’s presence
that during a telephone conversation with Stephany around June 19, 2009, Stephany
recounted the assault but did not mention anything about Appellant’s using or
exhibiting a knife.  Fry also admitted, however, that he did not ask her about the
knife.  Earlier in the trial, Stephany had testified that she did not remember
the conversation or even that Fry had called her, but she guessed that she did
not say anything to him about the knife.

No
Error to Exclude What She Didn’t Say When She Wasn’t Asked

          In
his sole point, Appellant complains that the trial court denied him his state
and federal rights to confront and effectively cross-examine Stephany by preventing
him from properly impeaching her, apparently through the testimony of his
investigator, Francis Fry.  Specifically, he appears to argue that the trial
court erred by excluding Fry’s testimony that Stephany did not tell Fry about
the knife during a telephone conversation in June of 2009.  Appellant now contends—though
he did not before the trial court—that the exclusion of this proffered testimony
violated his state and federal constitutional rights to confront and cross-examine
witnesses.

          While
Appellant now complains that the trial court’s ruling denied his federal and
state constitutional rights, at trial he mentioned neither the state nor
federal constitutions, any of their clauses pertaining to confrontation or
cross-examination of witnesses, or any cases interpreting those provisions, such
as Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  Accordingly,
we hold that Appellant failed to preserve a constitutional complaint for our
review.  See Tex. R. App. P. 33.1(a)(1); Lovill v. State, 319
S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (“A complaint will not be preserved
if the legal basis for the complaint raised on appeal varies from the complaint
made at trial.”); Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App.
2005) (holding that objection that could encompass complaints under either the
evidentiary rules or the Confrontation Clause is insufficiently specific and
that hearsay objection does not preserve constitutional complaint).

          From
the record at trial, it appears that Appellant stood on rule of evidence 613 as
grounds for presenting testimony from Fry in front of the jury that Stephany never
mentioned during their June 2009 telephone conversation that Appellant had used
a knife against her.

          Although
Appellant does not raise this for our consideration, it is a general rule of
evidence that the prior silence of a witness as to a fact to which he has
testified, where such silence occurred under circumstances in which he would be
expected to speak out, may be used to impeach the witness.  Cisneros v. State,
692 S.W.2d 78, 83 (Tex. Crim. App. 1985); see Franklin v. State, 606
S.W.2d 818, 848 (Tex. Crim. App. 1979) (op. on reh’g).  But “[m]erely having
the opportunity to say something does not constitute circumstances in which one
would be expected to speak out.”  Franklin, 606 S.W.2d at 848.

          As
we said, however, Appellant does not argue this issue, and we are disinclined
to argue it for him.  Moreover, even if we were to hold that Stephany’s silence
to Fry on the issue of whether Appellant had used a knife was inconsistent with
her subsequent testimony at trial that he did in fact use a knife, we fail to
see how Appellant was harmed.  First of all, Stephany conceded to the jury during
cross-examination that she did not tell Fry about the knife:

          Q.    [by Defense
Counsel]  Now, you didn’t mention anything about that knife or the other knife
to Mr. Fry when you talked to him on June the 19th, did you?

 

          A.    I
guess not.  I don’t remember the conversation that we had.

          Second,
even if she did not tell an investigator working for Appellant about the knife
months after the offense, the evidence shows that she had already told law
enforcement about it on the day of the offense.  The officer who saw Stephany
on the day of the offense testified that she immediately noticed a small cut on
her neck that Stephany evidently did not even realize was there but which she
then reported to the officer must have been caused by Appellant’s holding the
knife to her neck.

          Third,
the jury heard Appellant in a recorded jail-phone conversation chastise
Stephany for telling the police about the knife and urging her to drop the
charges.

          Fourth,
the evidence showed that Stephany was a reticent witness.  She completed an
affidavit of nonprosecution, and she had to be subpoenaed to testify against
Appellant.  On the day of the offense, she was very reluctant to tell Officer
Mitchell about her injuries, and she told the officer that she was afraid that
Appellant would retaliate against her if she pursued his prosecution.

          The
exclusion of Fry’s testimony did not prevent disclosure of the same information
through Stephany’s admission that she “guessed” she did not tell Fry about the
knife.  The exclusion of evidence in violation of the rules of evidence generally
is nonconstitutional error reviewable under rule 44.2(b).  Tex. R. App. P.
44.2(b); Walters v. State, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  Under that rule, we
must disregard nonconstitutional error that has no effect on an appellant’s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley, 983 S.W.2d at
259; Svitak v. State, No. 02-07-00382-CR, 2009 WL 279462, at *4 (Tex.
App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op., not designated for
publication).  Given the evidence presented at trial, even if we were to assume
for the sake of argument that the trial court erred when it excluded the
additional fact that Stephany did not volunteer to Fry that Appellant had used
a knife—particularly when Fry admitted that he did not ask her about it—we
would hold that the exclusion of that testimony would have had no effect on the
jury’s consideration of the case and thus no effect on Appellant’s substantial
rights.  Accordingly, we overrule Appellant’s sole point.

Conclusion

          Having
overruled Appellant’s sole point, we affirm the judgments of the trial court.

 

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 12, 2012









[1]See Tex. R. App. P. 47.4.





[2]Appellant pleaded guilty
to aggravated robbery and not guilty to aggravated assault.  The jury found him
guilty of both, and the trial court set punishment at concurrent sentences of
forty five years’ and ten years’ confinement, respectively.  Appellant filed
notices of appeal in both cases and asks us to reverse the “convictions.”  His
sole issue on appeal, however, relates only to the aggravated assault case, and
despite conclusorily averring that the alleged error affected punishments in
“both causes,” he does not suggest how that might be true.  Accordingly, we
consider only the aggravated assault case and affirm the trial court’s judgment
in the aggravated robbery.  See Tex. R. App. P. 38.1(i), 43.2(a); Russeau
v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), cert. denied,
548 U.S. 926 (2006); Tong v. State, 25 S.W.3d 707, 710 (Tex.
Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001); Mosley v. State,
983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied,
526 U.S. 1070 (1999).





[3]By the time she testified
at Appellant’s trial, Officer Mitchell’s last name had changed to Villanueva,
and she had been promoted to detective.