**AFFIRMED and Opinion Filed May 5, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01011-CR

**JACOLBY MARQUAN HILL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-1775383-I**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

Appellant, Jacolby Marquan Hill, was charged with capital murder in the killing of Jerell Dilworth, a/k/a "JD." A jury convicted appellant of the lesser included offense of murder and subsequently sentenced him to forty-six years' imprisonment.

Appellant raises four issues on appeal: (1) the evidence is insufficient to support the jury's rejection of his defense of a third person claim; (2) the trial court

erred by permitting questions about appellant's termination of his police interview; (3) the jury charge lacked an adequate description of the law of defense of a third person; and (4) the jury charge lacked a proper instruction on the applicable culpable mental states because the mens rea of "knowingly" does not apply to a capital murder prosecution. We affirm.

## Background

On the morning of March 4, 2017, appellant shot and killed Dilworth during a "drug deal gone bad." Dilworth suffered three gunshot wounds; two were to the back of his head and one was to the back of his neck on the right side. The medical examiner testified that both wounds to the back of the head were fatal and would have caused immediate incapacitation and death.

Appellant had contacted Dilworth that morning. They agreed that appellant would purchase an ounce of marijuana from Dilworth for $280. Appellant had known Dilworth for a couple of months and had previously purchased fourteen grams of marijuana from him for $150.

After exchanging several phone calls, Dilworth arranged to meet appellant at a tobacco or "smoke" shop across the street from the White Rock Hill Apartments on Ferguson Road in Dallas, Texas. Appellant asked his brother, Ashton Hill, who was living with him at the time, to drive with him to collect the marijuana. Ashton drove his white Buick to the drug buy with appellant in the passenger seat.

Once at the tobacco shop, appellant waited for Dilworth. Appellant continued to call Dilworth during this time. When Dilworth arrived, appellant moved to the back passenger seat in order to allow Dilworth to sit in the front passenger seat. Dilworth got in the Buick and instructed Ashton and appellant to drive over to the apartment complex to pick up the marijuana. The three drove through the apartment complex until Dilworth flagged down Untrion Richardson. Dilworth exited the vehicle and instructed the brothers to make a U-turn and park while he obtained the marijuana.

Richardson testified that Dilworth had called him several times that morning seeking marijuana. When Dilworth approached, Richardson gave him a baggie of marijuana. Richardson described the baggie of marijuana as a zip-lock bag containing ten to fourteen ounces of marijuana. According to Richardson, the marijuana was "something you would take if you were fixing to go to a party or something to smoke with a few friends. It wasn't a large amount to get killed over."

Appellant testified that he observed a hand exchange between Richardson and Dilworth, but did not see what was exchanged. After the exchange, Dilworth returned to the Buick and Richardson walked away.

Appellant testified that, upon re-entering the vehicle, Dilworth asked him if he had the money. Appellant responded, "[Y]eah, where the weed?" Dilworth replied, "I got you, we waiting on [Richardson]." According to Appellant,

Richardson remained standing on the curb after Dilworth re-entered the vehicle. Appellant testified that he leaned over the front passenger seat and observed the top of a gun in Dilworth's possession. Appellant also testified that Dilworth was "coming up with the gun." Appellant claimed that he "just reacted" and pulled his own handgun – that he had previously placed in the back pocket of the front passenger seat – and intentionally shot Dilworth. Dilworth fell forward in the passenger seat. As the brothers sped away from the apartment complex, appellant and Ashton pushed Dilworth's body out of the vehicle.

At trial, appellant testified he was in fear of his life and his brother's life. Appellant denied that Ashton had a handgun. He also denied any discussion or plan to rob Dilworth. Appellant stated that everything was fine until he saw Dilworth's handgun, he never had any issues with Dilworth, and there was no exchange of words or looks.

Richardson and other residents of the apartment complex heard the gunshots. Gwendolyn Barnes, who was driving into the apartment complex, saw the white Buick "weaving and wobbling" as it drove out of the complex. Barnes saw one of the Buick's doors open and a body and a handgun fall out the vehicle. Pearnetta Perry, another resident of the apartment complex who heard the gunshots, called 9-1-1 after she approached Dilworth's body and realized he was dead. Responding Dallas police officers, who arrived at the scene around 11:40 a.m., observed the

–4–

deceased Dilworth lying on the apartment complex roadway with a black handgun lying a few feet away. A twenty-seven-foot long blood trail led to the deceased. Twenty-four baggies of marijuana and $1,450 were subsequently found in Dilworth's pockets.

After leaving the apartment complex, appellant and Ashton parked the Buick at a nearby apartment complex. There was blood all over the inside of the vehicle. Appellant testified they parked the car because he did not want to be found with it. Appellant then went back to the apartment that he shared with his girlfriend, Briderricka Jackson, and "chilled for a little bit."

Appellant later contacted his mother and told her they were heading over to her house in Forney, Texas. Appellant, Ashton, and Jackson drove to Forney in Jackson's car, leaving the Buick where it was parked.

When they arrived at his mother's home in Forney, Appellant confessed to her and his stepfather, Andrew Webb, that he had "messed up bad" and "just shot somebody." According to Webb, appellant told him the trouble started when Ashton handed Dilworth counterfeit bills. Dilworth realized that the bills were counterfeit and a "tussle" ensued in the front seat of the Buick between Dilworth and Ashton. Appellant told Webb that both Ashton and Dilworth drew handguns, with Ashton drawing his first. Appellant then drew his handgun and shot Dilworth multiple times. Appellant told Webb that he killed Dilworth.

Appellant testified that Webb told him to bring the Buick to Forney to clean it. At sundown, appellant and Ashton retrieved the Buick and drove it to the Forney residence. Webb testified that when he opened the front passenger door he saw "a lot of blood," a bunch of blood spatter, and "a bunch of like meat" on the door panels, the seats, the dashboard, and the roof of the vehicle. According to Webb, appellant did not show any remorse nor did he appear anxious or scared. They attempted to clean the inside of the Buick and stored it in Webb's garage for the night. They moved the Buick to appellant's uncle's ranch in Van Zandt County the following morning.

Webb subsequently contacted the police, told them what had occurred at his residence, and that there was evidence in his trashcans. On March 6, 2017, Detective Derick Chaney and other Dallas police officers drove to Forney to collect evidence and interview Webb. Officers collected a vehicle floor mat, gloves, and towels from Webb's trashcans; subsequent DNA tests showed Dilworth's blood on these items. Afterward, the officers drove to the ranch in Van Zandt County to take possession of the Buick.

Crime scene analyst Julia Wayland utilized Blue Star to illuminate blood in the vehicle. This testing showed blood located all over the vehicle, but concentrated primarily on the inside of the front passenger door, the front passenger seat, the right

half of the driver seat, and the center console. That evening, Detective Chaney obtained an arrest warrant for appellant.

Appellant and Ashton learned of the warrant and turned themselves in to the police on March 8, 2019.

Chaney interviewed appellant following his arrest. During that interview, appellant acknowledged that he knew Dilworth who was his marijuana supplier. Appellant also acknowledged that he met up with Dilworth on the day of the murder and that Dilworth was in the vehicle with him at the apartment complex. When Chaney asked appellant to tell him his side of the story, appellant made two responses: "I'm not a bad person" and "I don't want to talk; I don't want to get myself in nothing bro, ah." Appellant then asserted his right to counsel and the interview ceased.

## Issue 1: Jury's Rejection of Defense of a Third Person

In his first issue, appellant challenges the sufficiency of the evidence to support the jury's rejection of his claim that he shot Dilworth in defense of a third person, *i.e.*, his brother Ashton. The State responds that the evidence supports both appellant's murder conviction and the jury's rejection of appellant's defense of a third person issue. We agree with the State.

***Standard of Review***

In reviewing the legal sufficiency of the evidence for a jury's rejection of an issue such as defense of a third person, we apply the standard of *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). *Saxton v. State*, 804 S.W.3d 910, 913–14 (Tex. Crim. App. 1991) (applying the *Jackson v. Virginia* standard to jury's rejection of a self-defense claim); *see also Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (reaffirming the principles of *Saxton* in conjunction with a general sufficiency analysis). Under this standard, we view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining an appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

Here, the jury was given a lengthy charge on the law of defense of a third

person.[1] Both the prosecution and the defense addressed this issue during final jury

---

[1] Defense of Third Person Justification as Applies to Murder

In regards to the offense of murder you are instructed that under our law a person is justified in using force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force to protect himself against the unlawful force of another which he reasonably believes to be threatening the third person he seeks to protect, and he reasonably believes that his intervention is immediately necessary to protect the third person.

A person is justified in using deadly force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force to protect himself against another which he reasonably believes to be threatening the third person he seeks to protect, and when and to the degree the person reasonably believes deadly force is immediately necessary to:

A) protect the third person against the other's use or attempted use of unlawful deadly force;

or

B) prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

and he reasonably believes that his intervention is immediately necessary to protect the third person.

The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant:

(1) knew or had reason to believe that the person against whom the deadly force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the third person's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the third person from the defendant's habitation, vehicle, or place of business or employment; or

argument. By returning a verdict of guilty on the lesser included offense of murder, the jury impliedly rejected appellant's claim that he shot Dilworth in defense of a third person.

### Defense of a Third Person

Appellant does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of the murder beyond a reasonable doubt. Appellant challenges only the jury's rejection of his claim that he shot Dilworth in defense of a third person.

Self-defense and defense of a third person are justification defenses for a defendant's actions. *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.31, 9.32, 9.33. A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. PENAL § 9.31(a). A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or

---

(C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery

(2) the defendant and third person did not provoke the person against whom the force was used; and

(3) the defendant and third person was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

PENAL § 9.33. A defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending himself. *Henley v. State*, 493 S.W.3d 77, 88–89 (Tex. Crim. App. 2016).

The law distinguishes between ordinary force and deadly force used in justification defenses. *See* PENAL §§ 9.31, 9.32. A defendant is justified in using ordinary force against another when and to the degree the defendant reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A defendant is justified in using deadly force against another if the defendant would be justified in using force against another under section 9.31, and when and to the degree the defendant reasonably believes the deadly force is immediately necessary to protect against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(1), (2)(A). Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01.

Both self-defense and defense of a third person require that the defendant have a reasonable belief that use of force is "immediately necessary" to protect against

another's use or attempted use of unlawful force. *Henley,* 493 S.W.3d at 89. Under a claim of defense of a third person, a person must reasonably believe that his intervention is "immediately necessary" to protect the third person. *Id.* Although the term "immediately necessary" is not defined in the Penal Code, the Court of Criminal Appeals has looked to what constitutes imminent harm in deciding when force is "immediately necessary":

> "Imminent" has been defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." Thus, imminent harm is harm that is ready to take place–harm that is coming in the very near future. Logically, then, *if conduct is "immediately necessary" to avoid harm that is imminent, that conduct is needed right now*. The justification defense of necessity applies when action is needed "immediately" (*i.e.*, now) to avoid "imminent" harm (*i.e.*, harm that is near at hand). Applying this interpretation in the context of self-defense and defense of a third person*, force that is "immediately necessary" to protect oneself or another from a person's use of unlawful force is force that is needed at that moment*–"when a split second decision is required."

*Id*. at 89–90 (citations omitted)(emphasis added).

The defendant has the burden of production, *i.e.*, producing some evidence to support a justification claim. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove that defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. The burden of persuasion does not require the production of evidence; it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913.

–12–

*Jury Properly Rejected Self-Defense*

As noted above, the jury in this case was instructed on the law of defense of a third person. By convicting appellant of murder, the jury impliedly rejected appellant's claim that he acted to defend his brother. *See Saxton*, 804 S.W.2d at 914.

The only evidence of appellant's justification defense came from appellant's testimony that, during the course of the drug transaction, he saw Dilworth with a gun. Appellant testified that he saw the top of a gun in Dilworth's hand and that Dilworth was "coming up" with the gun:

> [APPELLANT] He . . . like . . . got it in his hand, I see the top of the gun. I can't see the bottom part, I can just see the top part of the gun . . . He pulled it, he coming up with the gun. The gun coming – I can only see the top part so I can't see which way he coming, but he coming from the right side, he coming from the right side.

Appellant testified that he grabbed his own gun, previously stowed in the back pocket of the passenger seat, and started shooting. He testified that he did so because he was in fear of his life and the life of his brother.[2] Appellant testified, repeatedly, that he "just reacted" when he saw that Dilworth had a gun. Appellant admitted, however, that he intentionally pulled out his gun and shot into Dilworth's head.

---

[2] Despite the fact that appellant testified that he was in fear of his own life, the jury was not charged on the law of self-defense. Indeed, a self-defense charge was not requested by either party. A trial court has no duty to sua sponte instruct the jury on unrequested defensive issues. *Posey v. State*, 966 S.W.2d 57, 62-63 (Tex. Crim. App. 1998); *see also Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018) (recognizing the rule in *Posey* but holding that when a trial court judge sua sponte instructs on a defensive issue, the court must do so correctly).

Appellant, through his own testimony, admitted the essential elements of murder, *i.e.*, that he intentionally or knowingly caused Dilworth's death by shooting him with a firearm. PENAL § 19.02(b)(1) (providing that a person commits murder if he intentionally or knowingly causes the death of an individual). A firearm is a deadly weapon per se, PENAL § 1.07(a)(17)(A), and the jury was so charged. From this evidence, the jury could infer that appellant shot Dilworth with the intent to kill. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (holding that specific intent to kill, in a murder prosecution, may be inferred from use of deadly weapon); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (holding that if a deadly weapon is used in a deadly manner in a murder case the inference is almost conclusive that the defendant intended to kill).

The medical evidence also supports the essential elements of murder. The medical examiner testified that she observed soot at one of the two head entrance wounds; this indicated to her that the distance of this gunshot was between contact and two inches away. The gunshot to the neck traveled upward striking the jaw, which would be consistent with Dilworth falling forward or being slumped forward before the final gunshot. Both gunshot wounds to the back of the head were fatal and would have caused immediate incapacitation and death. The method of the shooting and the nature of the wounds support a verdict of an intentional or knowing killing. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (holding that a jury may

infer intent and knowledge from the method of committing the crime and the nature of wounds inflicted on the victim).

The evidence also shows that appellant fled the scene of the shooting. Appellant testified that he and his brother pushed Dilworth's body out of the car and then drove off. Flight reflects consciousness of guilt. *Clayton*, 235 S.W.3d at 780 (noting that a "fact finder may draw an inference of guilt from the circumstance of flight"); *see also Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd) (referencing flight from the scene of a crime as evidence a jury could consider in rejecting a self-defense claim). Flight is also a circumstance from which an intent to kill can be inferred. *See Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (a finding of intent to kill may be inferred from evidence of flight from the scene). The jury could infer an intentional or knowing killing from the facts surrounding appellant's flight.

Further, the evidence established that appellant attempted to conceal evidence of this shooting. Appellant tried to clean up the blood, blood spatter and brain matter in the Buick. He later drove that vehicle to a ranch in Van Zandt County for the purpose of concealing that vehicle. A jury may consider a defendant's attempt to destroy or conceal evidence as evidence of the culpable mental state for murder. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that attempts to hide or conceal evidence in a murder prosecution shows consciousness of guilt);

–15–

*see also Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (holding that a defendant's culpable mental state for murder could be inferred from concealing the body); *Ross v. State*, No. 05-18-00262-CR, 2019 WL 3543578, at *8 (Tex. App.—Dallas Aug. 5, 2019, no pet.) (mem. op., not designated for publication)(holding that concealing the murder weapon and trying to destroy potential gunshot residue could be considered as evidence of a culpable mental state for murder).

Nor does appellant's testimony conclusively prove his claim that he shot Dilworth in defense of a third person. Appellant's defense hinged entirely on the credibility of his own testimony. The jury could, and did, reject his testimony by returning a guilty verdict. *See Saxton*, 804 S.W.2d at 914; *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We recognize that the "principles affording deference to a jury's credibility determinations are not without limits." *Braughton*, 569 S.W.3d at 611. A jury's decision to reject testimony must be rational in light of the totality of the record, and any underlying inferences used to reject that testimony must be reasonable based upon the cumulative force of all of the evidence. *Id*. Nor is a jury "permitted to disregard undisputed objective facts that can support only one logical inference." *Id*. Here, however, appellant does not direct this Court to anywhere in the record, and we have found none, that would render the jury's credibility determinations in this

case irrational. *Id*. This Court may not substitute its own view of the weight and credibility of appellant's testimony for that of the jury. *Id*. at 610.

We conclude that the evidence is legally sufficient to prove that appellant either intentionally or knowingly murdered Dilworth. It was not error for the jury to reject appellant's testimony that he shot Dilworth in the defense of a third person. We overrule appellant's first issue.

**Issue 2: Post-Arrest Silence**

In his second issue, appellant claims that the State improperly questioned him about his post-arrest silence in an effort to imply that his justification claim was of recent fabrication. The State responds that appellant did not preserve this issue for appellate review or, in the alternative, his contention is without merit. We agree with the State.

*Questioning, Objection, and Ruling*

On direct examination, appellant testified that he talked to Detective Chaney the night of the shooting. He admitted that he was not forthcoming with the detective about any information surrounding the shooting, including his own involvement:

> [APPELLANT] I got a call from detective, one of the detective. (sic). I guess it was Detective Chaney. He asked me did I know JD (Dilworth), I said yeah. *He said did I know anything about him being killed, I said no*. He asked me can I come in for questioning. I told him do I have a warrant? He told me no, he just want to talk to me. I said if I get a chance I come up there. He said, well, call me back and let me know. I never called back.

Q. Did you know – you knew why he wanted to talk to you; is that correct?

A. Yes, sir.

(emphasis added).

On cross-examination, the State questioned appellant about the interview he had with Detective Chaney following his arrest:

Q. [BY THE PROSECUTOR] And Detective Chaney, he was real nice to you, right?

A. Yes, sir.

Q. He, I think, made you feel comfortable; would you agree with that?

A. Yes, sir.

Q. He told you that he just needed to hear your side of the story, right?

A. Yes, sir.

Q. Just talk to him.

A. Yes, sir.

Q. Okay. And you confirmed a couple of things for him, right? That you were in the car, that you picked Mr. Dilworth up from the smoke shop, right?

A. Yes, sir.

Q. *And then when he starts to ask you, all right, what happened next, you stop talking, right?*

A. *Yes, sir.*

Q. *He says to you he just needs to know, he needs to know what was going on between you and Mr. Dilworth, right?*

[DEFENSE COUNSEL] *Your Honor, I'm going to object if he's – the defendant was simply invoking his rights, and to prejudice the jury by the defendant invoking his rights.*

THE COURT: *I'm going to overrule the objection at this time.*

\*

Q. [BY THE PROSECUTOR] *You didn't tell Detective Chaney anything about what happened in that car that day.*

A. *No, sir.*

Q. He gives you lots of examples of what might have been going on even, right?

A. Yes, sir.

Q. And you don't say a thing with regard to what happened in that car?

A. He really didn't – he just said he need to talk to me. I said, I know where you going with it. He didn't give me no details, he just asked was I willing to talk. I told him, you know what I'm saying, what I feel comfortable telling him.

Q. So even there face to face with the detective, who's been investigating this whole thing, *who is asking you just tell him your side of the story, tell him what happened, you still won't say, right?*

A. *No, sir,* but because – the reason was because when I was –

Q. Hang on, Mr. Hill. *You don't tell him what happened in that car, do you?*

A. *No, sir.*

Q. He asks you several times to open up to him about that, just tell him, right?

A. Yes, sir.

Q. *And you don't say anything about what happened in that car*.

A. *No, sir*.

Q. In fact, you tell him, I don't want to say anything, I don't want to get in nothing, right?

A. I said I don't want to get myself in no more trouble.

Q. Because you knew what you had done in that car would get you in trouble.

A. No, I knew I was being charged with capital murder. I knew I was already in trouble.

Q. Because he told you that at the beginning. He said, look, you're charged, right?

A. Yes, sir. Yes, sir.

Q. So you know at that point it can't possibly get any worse for you, you're being charged, right?

A. Yes, sir.

Q. *Now is the time to tell him what happened to get yourself out of trouble, right*?

A. Yes, sir.

Q. *But you didn't do that.*

A. *No, sir.*

(emphasis added).

Appellant later testified, on re-direct examination, he had spoken to several lawyers who told him not to speak to the police at all until he turned himself in.

***Preservation***

Counsel for appellant voiced the single objection set out above to appellant's testimony. Yet, the record shows this objection was not timely, was not repeated, and that similar testimony was elicited both before and after defense counsel's sole objection.

*Objection Not Timely*

The following testimony concerning appellant's post-arrest silence was elicited without objection:

> Q. [BY THE PROSECUTOR]: And then when he (the detective) starts to ask you, all right, what happened next, you stop talking, right?

> A. [APPELLANT]: Yes, sir.

The prosecutor then asked the next question:

> Q. [BY THE PROSECUTOR] He says to you he just needs to know, he needs to know what was going on between you and Mr. Dilworth, right?

It was only after the second question that defense counsel objected on grounds that the prosecutor's questioning violated appellant's rights to post-arrest silence.

Because appellant's objection was made after the prosecutor's first question was answered and the second question was asked, the objection was not timely and failed to preserve error. *See Lagrone v. State,* 942 S.W.2d 602, 618 (Tex. Crim.

App. 1997) (holding that if a defendant fails to object until after an objectionable question has been asked and answered, and he cannot show a legitimate reason to justify the delay, his objection is untimely and error is waived).

### *Objection Not Repeated*

To preserve a complaint for appeal, a party must lodge a timely and specific objection, obtain an adverse ruling, and then either "object each time the inadmissible evidence is offered or obtain a running objection." *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); TEX. R. APP. P. 33.1(a).

After defense counsel's sole objection was overruled, the prosecutor continued to question appellant about his refusal to speak with the police. Appellant replied, at least five times, that he told Chaney nothing about what happened in the car. Defense counsel did not further object, nor did he request a running objection to this testimony. As a result, appellant failed to preserve this error for our review.

### *Other Evidence Received Without Objection*

Erroneously admitted evidence will not result in reversal when other evidence, or substantially similar evidence, was received without objection, either before or after the complained of ruling. *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting any error was harmless in light of "very similar" evidence admitted without objection). Thus,

error in the admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere without objection. *See Leday*, 983 S.W.2d at 717–18.

Prior to appellant's testimony, Detective Chaney testified that, after researching phone calls, he spoke to appellant.  Appellant told Chaney he would talk to the detective, but never made any arrangements to do so. Appellant admitted he had this conversation with the detective, testified that he told Chaney nothing, and did not contact the detective again. Because the evidence of appellant's lack of cooperation with the police came in elsewhere without objection, nothing is preserved for our review.

### No Error on the Merits

Even if appellant preserved this issue for our review, we would not find reversible error.

*Standard of Review*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Gonzalez v. State,* 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement. *Id*. We may not substitute our own decision for that of the trial court. *Id*.

*Post-Arrest Silence*

Generally, a comment on a defendant's post-arrest silence violates his Fifth Amendment privilege against self-incrimination. *See* U.S. CONST. amends. V and XIV; *Doyle v. Ohio*, 426 U.S. 610, 617–618 (1976); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995).

However, when a defendant takes the witness stand, he is subject to cross-examination and impeachment like any other witness. *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex. Crim. App. 1985). A defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter and treated in every respect as any other witness except when there are overriding constitutional and statutory provisions." *Id*. The "prior silence of a witness as to a fact to which he has testified, where such silence occurred under circumstances in which he would be expected to speak out, may be used to impeach the witness." *Id*.; *see also Salazar v. State* 131 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, pet. ref'd) (holding that the State "cannot improperly comment upon a defendant's post-arrest silence when he did not remain silent"); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.) (holding that the defendant "opened the door" to impeachment on his post-arrest silence by trying to shore up his defense strategy through questions about his post-arrest statements to the police).

*Application of the Law to the Facts*

Following appellant's arrest, he consented to be interviewed by Detective Chaney. During the interview, appellant acknowledged that he knew Dilworth, Dilworth was his marijuana supplier, he met up with Dilworth on the day of the murder, and Dilworth was in the vehicle with him at the apartment complex. When given an opportunity to assert a defense, appellant made two responses: "I'm not a bad person" and "I don't want to talk; I don't want to get myself in nothing bro, ah." Appellant then asserted his right to counsel and the interview ceased.

Appellant waived his right to remain silent by participating in the interview with Chaney. Consequently, the State was free to cross-examine him as to why he did not assert his defense at the time he was given an opportunity to do so.

Further, the record shows that Cheney contacted appellant on the evening of the murder and asked if appellant knew anything about the murder; appellant told Chaney that he did not. Appellant testified that he knew what Cheney was calling about, but chose not to contact the detective or to schedule an interview. It was only after turning himself in to the police that appellant admitted to Cheney that he knew about the murder investigation and was present at the time of the murder; he still did not assert his defense of a third person claim. Under these circumstances, the State's impeachment was permissible. *See Ewing v. State*, 971 S.W.2d 204, 208 (Tex. App.—Beaumont 1998, pet. ref'd) (holding that when a defendant does not invoke

his right to remain silent but makes a statement to the police regarding his involvement in the offense, the fact that the story he gave the police differs in significant respects from his trial testimony may be developed and argued before the jury); *Mendoza v. State,* 840 S.W.2d 697, 700 (Tex. App.—Corpus Christi 1992, no pet.) (holding that because a defendant's trial testimony conflicted with a prior statement the prosecutor was authorized to use this conflict for impeachment and in argument). Because appellant did not remain silent, the State's cross-examination did not improperly comment on appellant's post-arrest silence. We overrule appellant's second issue.

### Issue 3: Jury Charge on Defense of a Third Person

In his third issue, appellant claims that he suffered egregious harm because of jury charge errors with respect to the trial court's instructions on defense of a third person. In multiple sub-issues appellant claims the jury charge (1) failed to correctly apply the law of defense of a third person to capital murder, (2) erroneously included a provocation instruction that failed to define the term "provoke," (3) included an erroneous duty-to-retreat instruction, (4) was "convoluted," "unnecessarily difficult to understand," and ambiguous, and (5) mis-sequenced the application paragraphs. The State responds that appellant's issue is multifarious or, in the alternative, that there is no error in the charge. We agree with the State.

### Multifarious Issue

Because appellant bases this issue on more than one legal theory, his entire issue is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). We could reject appellant's claims on that basis alone. However, in the interest of justice, we will address appellant's arguments.

### Standard of Review: Jury Charge Error

When evaluating alleged jury charge error, we must first determine whether the charge was erroneous. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). If we find error and appellant objected to that error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Where, as here, a defendant did not object to the charge, he is entitled to a reversal only if he suffered "egregious harm" as a result of the error. *Id*.; *see also* TEX. CODE CRIM. PROC. art. 36.19; *Ngo*, 175 S.W.3d at 743–44. Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or "vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, the actual degree of harm must be assessed in "light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information reflected in the record of the trial as a whole." *Trejo v.*

*State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171).

### Defense of Third Person and Capital Murder

Appellant claims that defense of a third person was a defense applicable to the entire capital murder charge and the trial court erred by limiting this defense to the lesser included offense of murder.

Appellant was indicted under a single theory of capital murder, *i.e.*, that he intentionally caused Dilworth's death by shooting Dilworth with a firearm , a deadly weapon, while he was then and there in the course of committing and attempting to commit the offense of robbery. The trial court properly instructed the jury on capital murder, then charged the jury that if it acquitted appellant of capital murder, it could consider whether he was guilty of murder, *i.e.*, by intentionally or knowingly causing Dilworth's death by shooting Dilworth with a firearm, a deadly weapon. The only distinction between capital murder and murder under the facts of this case is whether or not the jury found that appellant shot Dilworth while committing or attempting to commit robbery.

A person committing the offense of robbery has no right of self-defense against his intended victim. *See Davis v. State,* 597 S.W.2d 358, 360 (Tex. Crim. App. 1980); *Dickson v. State*, 463 S.W.2d 20, 23 (Tex. Crim. App. 1971); *Dillard v. State*, 931 S.W.2d 689, 697 (Tex. App.—Dallas 1996, pet. ref'd). This Court has

–28–

previously held, in a capital murder prosecution, that a defendant is not entitled to a jury instruction on self-defense to robbery at all. *Russell v. State*, No. 05-17-00124-CR, 2018 WL 525559 *9-10 (Tex. App.—Dallas Jan. 24, 2018, pet. ref'd) (mem. op., not designated for publication). We see no reason why that holding on self-defense should not apply to defense of a third person. We hold there is no error in the jury charge with respect to the trial court's limitation of defense of a third person to only the murder instruction.

Even if we were to find error in the charge, appellant has not suffered any harm, much less egregious harm. Appellant was convicted of murder, a lesser included offense of capital murder. The jury was fully charged on defense of a third person vis-à-vis the offense of murder.

### *Provocation and "Provoke"*

Appellant claims the trial court erred by including a provocation instruction in the charge. Appellant also claims, in the alternative, that if inclusion of that instruction was proper, the charge should have defined "provoke."

The charge did not contain a classic provocation or "provoking the difficulty" charge under PENAL § 9.31(b)(4).[3] Rather, the charge contained the words "provoke"

---

[3] This statute provides that the use of force against another is not justified if the actor provoked the other's use or attempted use of unlawful force, unless:

and "provoked" in portions of the charge clarifying the use of deadly force in defense of a third person:

> The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant:
>
> *
>
> (2) *the defendant and third person did not **provoke** the person against whom the force was used*;
>
> *
>
> *A person who has a right to be present at the location where the deadly force is used, who has not **provoked** the person against whom the deadly force is used*, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force, and a finder of fact may not consider whether the actor or third person failed to retreat in determining whether an actor reasonably believed that the use of deadly force was necessary.

(emphasis added). *See* PENAL 9.32.

The Penal Code does not contain a definition of "provoke" or "provocation." Generally, undefined words and terms are given their ordinary meaning. *Dobbs v.*

---

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor.

TEX. PENAL CODE ANN. § 9.31(b)(4). Provocation, or "provoking the difficulty" is a limitation on a defendant's right to self-defense. *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016). If a defendant provokes another person to attack him, as a pretext for killing the other person under the guise of self-defense, the defendant forfeits his right of self-defense. *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998).

*State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014). The Court of Criminal Appeals has suggested that "provocation" should be defined in a specialized manner applicable only to assertions of the self-defense justification in criminal proceedings. *See Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998). Even so, under *Smith*, a trial court need not instruct a jury on "provocation" at all unless there is evidence that the defendant's actions or words were "reasonably calculated to provoke the attack" and "were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon another." *Id*.; *see also Kennedy v. State*, No. 13-13-00416-CR, 2015 WL 3637917, at *8 (Tex. App.—Corpus Christi June 11, 2015, pet. ref'd)(mem. op., not designated for publication).

Here, there is no evidence that appellant acted or spoke in a way that could have provoked Dilworth. Nor is there evidence of any sort of verbal or physical altercation between appellant and Dilworth prior to the shooting. The only evidence of any sort of difficulty prior to the shooting was from appellant's self-serving testimony that Dilworth was "coming up with a gun" and Webb's testimony that appellant told him there was a "tussle" between Ashton and Dilworth after both drew their guns which resulted in appellant shooting Dilworth to protect Ashton. That testimony goes to justification for the shooting, not whether it was appellant who provoked any difficulty with Dilworth.

Because there was insufficient evidence of provocation, the trial court did not err by refusing to define "provoke" and/or "provoked."

Even if we were to assume that the trial court erred by failing to define these terms, we would not find egregious error. Appellant directs us to no evidence or argument which would support a "provoking the difficulty" theory, and our review of the record reveals none. The undisputed evidence showed that appellant intentionally shot Dilworth three times. Appellant's testimony referenced no provocation at all but only that he thought Dilworth was reaching for a gun. Accordingly, even if the jury had been instructed in accordance with *Smith*, it is unlikely that it would have any effect on the verdict by making it more likely that the jury would have found in favor of appellant's defense of a third person theory.

***No Duty to Retreat***

Appellant claims that the jury should not have been charged on the duty to retreat and that the instruction given to the jury implied that appellant and/or Ashton had a duty to retreat.

The trial court's charge contained the following instruction:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used ***is not required to retreat*** before using deadly force, and a finder of fact may not consider whether the actor or third person failed to retreat in determining whether an actor reasonably believed that the use of deadly force was necessary.

(emphasis added).

This instruction substantially tracked the language of PENAL § 9.32(c), (d), which prescribes when a person may lawfully use deadly force against another. The plain language of the charge makes it clear that appellant had no duty to retreat unless he was found to have provoked the difficulty. The charge accurately states the law applicable to justification defenses. *See Whitney v. State*, 396 S.W.3d 696, 701–03 (Tex. App.—Fort Worth 2013, pet. ref'd) (concluding there was no error in a jury charge that tracked the statutory language applicable to the duty to retreat). The charge did not include any additional instructions that would have caused the jury to believe that appellant had a general duty to retreat. *See Shannon v. State*, No. 08-13-00320-CR, 2015 WL 6394922, at *7 (Tex. App.—El Paso Oct. 21, 2015, no pet.) (not designated for publication). As a result, the jury charge was not erroneous.

### *Charge not Convoluted, Difficult to Understand, or Ambiguous*

Appellant claims that the trial court's explanation of Section 9.33 of the Penal Code was "too convoluted and unnecessarily difficult" for the jury to understand or follow, which led to an ambiguous application paragraph.

As noted above, the jury was given a lengthy charge on the law of defense of a third person.[4] The charge tracked the language of not just Section 9.33 but also

---

[4] *See supra*, note 1.

Sections 9.31(a) and 9.32(a), which gave the jury all the instructions and explanations applicable to defense of a third person. PENAL §§ 9.31(a), 9.32(a), 9.33. Because these instructions tracked the language of the applicable statutes, we fail to see how they can be considered convoluted or difficult to understand.

Nor did these instructions lead to an ambiguous application paragraph on the lesser included offense of murder:

> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about March 4th, 2017, in Dallas County, Texas, the defendant did then and there intentionally or knowingly cause the death of Jerell Dilworth, an individual, by shooting Jerell Dilworth with a firearm, a deadly weapon, then you will find the defendant guilty of murder as included in the indictment, and you will next consider whether the defendant's conduct was justified, as explained below.
>
> If you do not so find, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."
>
> If you should find from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or murder, but you have a reasonable doubt as to which offense he is guilty of, then you should resolve that doubt in the defendant's favor and find the defendant guilty of the lesser included offense of murder.
>
> If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge, you will acquit the defendant and say by your verdict "not guilty."

Appellant argues that the phrase – "If you do not so find, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty" – was ambiguous because it was unclear if the phrase "so find" referred to

the prior paragraph's references to the elements of murder or the justification of appellant's conduct.

The charge is clear to us. The jury was instructed that it should find appellant guilty if it found the elements of murder and only then consider whether appellant's conduct – *i.e.*, intentionally or knowingly shooting Dilworth with a firearm – was justified. If the jury did not find the elements of murder, or had a reasonable doubt, the jury was specifically instructed to acquit appellant of murder. We conclude that the charge was not ambiguous.

### *The Sequence of the Application Paragraphs*

Appellant argues that the defense of a third person instruction was not proper because it followed the application paragraph for murder and thus was improperly sequenced. According to appellant, this sequencing created bias against the defense and is incorrect as a matter of law.

The meaning of a trial court's instruction must be taken from the whole charge. *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd); *see also Dailey v. State*, No. 05-17-00016-CR, 2018 WL 3424361, at *5 (Tex. App.—Dallas July 16, 2018, pet. ref'd) (mem. op., not designated for publication). The second paragraph of the charge instructed the jury that "you may read these instructions as a whole." We must assume the jury followed the instructions as given.

*Dailey*, 2018 WL 3424361, at *5 (citing *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996)).

The charge defined all necessary terms and instructed the jury on defense of a third person in the abstract portion of the charge. The abstract portion of the charge was followed by an application paragraph applying the law of defense of third persons to murder. The jury was also instructed to acquit appellant if they had a reasonable doubt as to whether he acted in defense of a third person. Read as a whole, the charge adequately instructed the jury to acquit appellant if it found that appellant acted in defense of a third person or if it had reasonable doubt concerning whether he acted in defense of a third person. We therefore conclude that the trial court did not err by placing the defense of a third person instruction after the murder instruction.

***Charge as a Whole***

We have reviewed the entire charge and have concluded that there is no error in the charge. To the contrary, the charge instructed the jury in accordance with the applicable statutory provisions of the Penal Code and properly applied the law to the facts of the case. We overrule appellant's third issue.

## **Issue 4: Jury Charge: Culpable Mental States**

In his fourth issue, appellant claims that he suffered egregious harm because the trial court improperly included the definition of "knowing" in the jury charge.

Appellant contends that a murder committed knowingly is not a lesser included offense of capital murder and that the inclusion of a knowing instruction denied him "fair notice of the nature of the accusation" and lessened the State's burden of proof. The State responds that the jury was correctly charged on the appropriate culpable mental states for the lesser included offense of murder. We agree with the State.

***The Jury Charge***: ***Intentionally and Knowingly***

In the jury charge, the trial court defined the two culpable mental states applicable to murder, *i.e.*, intentionally and knowingly:

> With regard to the offenses of capital murder and murder, a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

> With regard to the offense of murder, a person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See* PENAL §§ 6.03 (a), (b).

In the application paragraphs of the charge, the jury was instructed that it could convict appellant of capital murder only if it found that appellant intentionally caused Dilworth's death in the course of committing or attempting to commit the offense of robbery. In the alternative, the jury was instructed that it could convict appellant of the lesser included offense of murder if it found that appellant intentionally or knowingly caused Dilworth's death.

Appellant did not object to this charge, nor did he request any special instructions. The jury returned a guilty verdict of murder without specifying which culpable mental state it found.

***Lesser Included Offense/Mens Rea***

A trial court does not have jurisdiction to convict a defendant of an offense not charged in the indictment. *Houston v. State*, 556 S.W.2d 345, 347 (Tex. Crim. App. 1977); *Jacob v. State*, 864 S.W.2d 741, 742 (Tex. App.—Houston [14th Dist.] 1993), *aff'd*, 892 S.W.2d 905 (Tex. Crim. App. 1995). An exception exists when the conviction is for an offense that is a lesser included offense of the charged offense. *Jacob*, 864 S.W.2d at 742. An offense is a lesser included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. CRIM. PROC. art. 37.09. If an offense meets any of these definitions, then it is a lesser included offense to the offense charged. *Hicks v. State*, 372 S.W.3d 649, 653 (Tex. Crim. App. 2012). Murder is a lesser included offense of capital murder. *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006).

### A "Knowing" Murder is a Lesser Included Offense of an "Intentional" Murder

The four levels of culpable mental states for crimes in Texas are set out and defined in the Penal Code which classifies culpable mental states according to relative degrees, from highest to lowest, as follows: (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence. PENAL § 6.02(d). An offense committed "knowingly" is a lesser included offense of an offense committed intentionally. *See Hicks*, 372 S.W.3d at 653. However, the statute authorizing capital murder requires intent and thus excludes the possibility of a "knowing" capital murder. *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986); PENAL § 19.03(a)(2).

Here, the jury was specifically charged that it must find that appellant acted with intent in order to find appellant guilty of capital murder. Nothing in the charge permitted a finding of a "knowing capital murder" as a lesser included offense. The charge did permit the jury to find appellant guilty of the lesser included offense of murder if it found that he intentionally or knowingly caused Dilworth's death. PENAL § 19.02(b)(1) (providing that a person commits murder if he "intentionally or knowingly causes the death of an individual").

We conclude that the jury was properly charged on the definition of "knowingly" as part of the trial court's instructions on the lesser included offense of murder. Because we find there was no error in the charge, we need not consider the issue of egregious harm. We overrule appellant's fourth issue.

## Conclusion

The trial court's judgment is affirmed.

/Leslie Osborne/

LESLIE OSBORNE

DO NOT PUBLISH
JUSTICE
TEX. R. APP. P. 47.2(b)
181011F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

JACOLBY MARQUAN HILL,
Appellant

No. 05-18-01011-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1775383-I.
Opinion delivered by Justice
Osborne. Justices Myers and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered May 5, 2020